NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0564n.06

Nos. 20-3779/3998

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | |
|---|---|
| MAGNESIUM MACHINE, LLC; MAGNESIUM HOLDINGS, LLC; PARAMOUNT DESIGN, LLC, <br><br> Plaintiffs-Appellants, <br><br> v. <br><br> TERVES, LLC; MCDONALD HOPKINS, LLC, <br><br> Defendants-Appellees. | ) ) ) ) ) ) ) ) ) ) ) |

**FILED**
Dec 06, 2021
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

Before: DONALD, LARSEN, and THAPAR, Circuit Judges.

LARSEN, Circuit Judge. This case raises the question whether a three-word "trade secret" buried in a response to a lawfully issued subpoena was misappropriated when an attorney received it and passed it along to his client. Because there is no evidence that the lawyer or his client improperly obtained, disclosed, or used the alleged trade secret, there was no misappropriation. And the district court did not abuse its discretion by awarding attorney's fees for the bad faith invention and protraction of this lawsuit upon a lawsuit. Therefore, we AFFIRM the judgment of the district court.

I.

The underlying dispute began when appellee Terves, LLC sued Ecometal, Inc. for patent infringement. Terves alleged that Ecometal had infringed its patents by importing infringing magnesium material, used in the fracking industry, from China. *See Terves, LLC v. Yueyang Aerospace New Materials Co.*, No. 19-cv-1611 (N.D. Ohio, July 15, 2019). Ecometal supplies

magnesium to appellant Magnesium Machine, LLC, and the two are represented by the same counsel. The patent lawsuit is still ongoing, but a discovery dispute has spiraled into this separate action.

On October 7, 2019, Terves, acting through its counsel, McDonald Hopkins, informed Ecometal's lawyers that a subpoena would be served on a third party, Bradley Machine & Design, LLC. Bradley's agent, who is not a lawyer, responded to the subpoena; he said that Bradley had ended its relationship with Magnesium Machine and turned over a settlement agreement (the Agreement) between the two companies as proof. Bradley did not assert any confidentiality concerns related to the Agreement.

On October 15, the same day that Bradley responded to the subpoena, McDonald Hopkins passed the Agreement along to Terves's President, Andrew Sherman, for use in the litigation. Sherman shared the Agreement with another Terves employee, Steven Barela, who was helping with the case.

On October 25, Magnesium Machine learned that Bradley had produced the Agreement to Terves. As a party to the settlement, Magnesium Machine knew that the Agreement contained a confidentiality provision. It also knew that an exception allowed production of the Agreement in response to a subpoena upon twenty days' notice so that either party could seek a protective order. And it knew that Bradley had failed to give that notice. Yet Magnesium Machine did nothing.

On November 1, Magnesium Machine received its own, separate subpoena from Terves. Counsel sprang into action. In a letter arguing that the new subpoena was improper because of the confidentiality clause and the twenty-day requirement, Magnesium Machine requested that Terves hand over all information related to the Agreement. Terves responded two days later, saying that it was unwilling to turn over the Agreement, which it received pursuant to a valid subpoena, but

offering to designate the Agreement as "Attorney's Eyes Only" under the Northern District of Ohio's Local Patent Rule 2.2. Terves also offered to quarantine the Agreement for twenty days, giving Magnesium Machine a chance to seek a protective order. Magnesium Machine agreed and Terves complied.

The dispute should have ended there. But it didn't. On November 8, during a meet-and-confer regarding the subpoena, Magnesium Machine asked whether the Agreement had been shown to anyone else. Counsel for Terves agreed to verify that the Agreement had not been "shared with anyone (or if it was, that all copies ha[d] been clawed back and destroyed)." On November 11, Magnesium Machine responded and asked Terves for the names of anyone who had been shown the Agreement. On November 20, Terves replied, explaining that the company President, Sherman, had received the agreement and had passed it on to one other Terves employee. Counsel for Terves confirmed that all copies had been deleted except for his own which was still marked "Attorney's Eyes Only." Magnesium Machine didn't respond.

Weeks later, on December 4, Magnesium Machine sued Terves under federal and state trade secrets laws and sought an ex parte seizure of all devices containing the Agreement. Magnesium Machine claimed that the Agreement held a trade secret, which it described as "products and methods for degrading . . . downhole tools used in the oil and gas industry" with "a salt-based treatment." Magnesium Machine didn't say what part of the trade secret was in the Agreement; it gave the court a copy of the Agreement with two and a half lines redacted as "MM Trade Secret Products and Methods." Obfuscating the timeline, Magnesium Machine described its back and forth with Terves's counsel as "urgent attempts to try to minimize the damage" from Bradley's "breach-laden disclosure of the trade secrets." It said that Terves's counsel had "deceived" Magnesium Machine "about the status of the [Agreement] and its purported

quarantine." How? Magnesium Machine claimed that "nearly three weeks" after the November 6 call, it learned that the Agreement had not been "held securely by an officer of the court" and, worse, was in the possession of two Terves employees. "[I]f these two deceptions were not bad enough," one of the employees was also highly skilled in magnesium technology. Magnesium Machine called these "blatant lies to cover up the misappropriation." And it pleaded that its first movers' advantage was "now highly at risk," prompting it to "frantically contemplate altering its prior business plans for the trade secrets."

Moved by the desperate plea, the district court granted the ex parte seizure. Officers immediately retrieved Sherman's laptop, storage devices, and cellphone. And Sherman was served with the complaint. That seems to be the first time someone at Terves became aware that the Agreement contained a supposed trade secret.

The next day, the court held an evidentiary hearing and vacated the seizure order. After listening to testimony from Sherman and Loren Swor, a co-owner of Magnesium Machine, the court was skeptical that the Agreement contained any trade secret, much less one that had been misappropriated.

First, Swor admitted that the alleged trade secret wasn't the full redacted portion of the Agreement, but just "three words." And the third word was "Patent," which the court noted was both false (there was, in fact, no patent, just a patent application) and misleading (patents can't be trade secrets since patents require disclosure). The court thought it implausible that Terves would have recognized a trade secret from three words—"__ ___ patent"—buried in the Agreement.

Second, the court was baffled by Magnesium Machine's argument that there had been misappropriation, when the evidence showed that the subpoena was issued properly. The response

to the subpoena was not marked, no precautions had been taken, and all Terves did was receive the unmarked Agreement.

After the vacatur, the district court granted Terves's motion to dismiss the misappropriation claim. Terves then moved for attorney's fees against Magnesium Machine under the provisions of the relevant state and federal trade secret acts, and against counsel, Dunlap Codding, under 28 U.S.C. § 1927 for unreasonably and vexatiously multiplying the proceedings. The district court granted this motion as well: it found that Magnesium Machine had brought its misappropriation claim in "bad faith" and that counsel's refusal to back down in the face of undisputed evidence unreasonably and vexatiously multiplied the proceedings.

Magnesium Machine appeals both orders. It seeks reversal of the district court's order dismissing its complaint, dissolving the seizure order, and denying further injunctive relief. It also asks for a reversal of the award of attorney's fees and sanctions. Those appeals were consolidated, and we take them in order.

## II.

We review a district court's dismissal of a complaint de novo. *Tennessee v. U.S. Dep't of State*, 931 F.3d 499, 506 (6th Cir. 2019). Magnesium Machine may proceed only if its claims "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). Claims have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Magnesium Machine alleges that Terves and McDonald Hopkins misappropriated a trade secret in violation of the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836, the Ohio Uniform Trade Secrets Act, Ohio Rev. Code §§ 1333.61–1333.69, and the Oklahoma Uniform Trade

Secrets Act, Okla. Stat. tit. 78, §§ 85–94 (1986). Misappropriation is an essential element of all

three statutes and is defined the same way. "Misappropriation" means:

> (A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
> (B) disclosure or use of a trade secret of another without express or implied consent by a person who–
>> (i) used improper means to acquire knowledge of the trade secret; or
>> (ii) at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was–
>>> (I) derived from or through a person who had utilized improper means to acquire it; or
>>> (II) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
>>> (III) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or
>> (iii) before a material change of his position, knew or had reason to know that–
>>> (I) the trade secret was a trade secret; and
>>> (II) knowledge of the trade secret had been acquired by accident or mistake.

18 U.S.C. § 1839(5); *see also* Ohio Rev. Code § 1333.61; Okla. Stat. tit. 78, § 86. "Improper

means" includes "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to

maintain secrecy, or espionage through electronic or other means; and does not include . . . any

other lawful means of acquisition." 18 U.S.C. § 1839(6).

We may put to one side the question whether the Agreement's three-word phrase ending

in "Patent" constitutes a trade secret; even if it did, neither Terves nor its counsel misappropriated

it. First, Terves didn't "acquire" the putative trade secret by "improper means." Magnesium

Machine doesn't even allege theft, bribery, misrepresentation, breach or inducement of a breach

of a duty to maintain secrecy, or espionage. And how could it? The subpoena issued to Bradley

was totally unrelated to the "trade secret" that was eventually turned over; Terves asked for

information related to the importation of magnesium from China after it learned that Ecometal had

listed Bradley's address as the delivery address. Bradley responded with the Agreement to show

that its relationship with Magnesium Machine had been dissolved, and only incidentally included the three-word "trade secret." This is far from an inducement to breach a duty to secrecy, much less espionage, theft, or bribery. And if Magnesium Machine has a claim against anyone, it would be Bradley. Terves's subpoena request is the definition of a "lawful means of acquisition." *See* 18 U.S.C. § 1839(6)(B).

Second, Terves didn't disclose or use the trade secret. Magnesium Machine alleges only that Terves received the trade secret from Bradley, not that Terves turned around and communicated that secret to third parties or began using it in its own business.

Magnesium Machine has another theory—that Terves's counsel, McDonald Hopkins, made the disclosure when it forwarded the Agreement to Terves on October 15. But, of course, McDonald Hopkins was acting merely as Terves's agent; and we question whether there could be actionable disclosure by Terves to itself. *See Rogers Corp. v. Arlon, Inc.*, 855 F. Supp. 560, 572 (D. Conn. 1994). But even if we treat Terves and its counsel as separate entities, McDonald Hopkins's disclosure was not "misappropriation." The law firm used no "improper means" when it acquired the Agreement by lawful subpoena.[1] *See* 18 U.S.C. § 1839(5)(B)(i). And, although disclosure may sometimes trigger liability without "improper" acquisition, that is only when the discloser has knowledge of the trade secret. *See id.* § 1839(5)(B)(ii) & (iii). Magnesium Machine hasn't shown that McDonald Hopkins knew anything about the trade secret; indeed, it is unclear how an attorney should have recognized that a three-word phrase ending in the word "Patent"

---

[1] Magnesium Machine argues for the first time on appeal that McDonald Hopkins deployed "improper means" through repeated "misrepresentations" in the back and forth beginning on November 4. That argument is forfeited. But even if it weren't, and even if we agreed that there were misrepresentations, there still must be acquisition, disclosure, or use *by* "improper means." 18 U.S.C. § 1839(5). Whatever misrepresentations Magnesium Machine has in mind, they occurred after the trade secret was already acquired, and are unrelated to any disclosure or use.

could have been a trade secret. If Magnesium Machine actually had a patent, then by definition, its existence would have been public.

Magnesium Machine suggests that McDonald Hopkins misappropriated the trade secret by failing to label the Agreement, upon receipt, as "Attorney's Eyes Only" under the Northern District of Ohio's Local Patent Rule 2.2. This argument doesn't get off the ground. Rule 2.2 allows "disclosures deemed confidential by a party [to] be produced to the adverse party for the eyes of outside counsel of record only, marked 'Attorney's Eyes Only.'" This establishes a procedure for *producing* parties to protect their confidential documents. It doesn't create a duty for receiving parties. But even if Local Patent Rule 2.2 did create such a duty, it wouldn't help Magnesium Machine. There is still no evidence that Terves's counsel realized, or should have realized, there *was* a trade secret. Magnesium Machine claims that counsel was "personally aware that . . . the Settlement Agreement [was] confidential," but confidentiality alone does not a trade secret make.

Because there was no "misappropriation" under any of the trade secret statutes, we do not address the question whether the litigation privilege would be a separate bar to Magnesium Machine's claims.

III.

We now turn to the award of attorney's fees. We review a district court's award of attorney's fees for abuse of discretion. *Imwalle v. Reliance Med. Prods., Inc.,* 515 F.3d 531, 551 (6th Cir. 2008). We review the factual findings underlying that decision for clear error. *Degussa Admixtures, Inc. v. Burnett*, 277 F. App'x 530, 534 (6th Cir. 2008); *Bergman v. United States*, 844 F.2d 353, 357 (6th Cir. 1988).

A.

All three trade secret statutes permit a court to award reasonable attorney's fees if it finds that a misappropriation claim was brought in "bad faith." 18 U.S.C. § 1836(b)(3)(D); Ohio Rev. Code § 1333.64(A); Okla. Stat. tit. 78, § 89(1). The definition of "bad faith" has been interpreted by courts somewhat differently among these statutes. But the district court found that Magnesium Machine's actions met the definition under any standard. We agree.

We haven't addressed the meaning of "bad faith" under any of the trade secret acts here. But other courts have applied a test with objective and subjective prongs. *See RJB Wholesale, Inc. v. Castleberry*, 788 F. App'x 565, 566 (9th Cir. 2019) (concluding that bad faith exists under Washington law "when a party intentionally brings a frivolous claim, counterclaim, or defense with improper motive" and using the same standard for federal trade secrets law) (quotation marks omitted); *Green Bay Packaging, Inc. v. Preferred Packaging, Inc.*, 932 P.2d 1091, 1098 (Okla. 1996) (deciding that, under Oklahoma law, bad faith exists "when the claim was made for oppressive, abusive or wasteful reasons") (quotation marks omitted); *Am. Chem. Soc'y v. Leadscope, Inc.*, 2010-Ohio-2725, ¶ 84 (Ct. App.) (explaining that, under Ohio law, "bad faith" can include a claim that is "objectively specious," being "without substance and devoid of merit"); *see also Akira Techs., Inc. v. Conceptant*, Inc., 773 F. App'x 122, 125 (4th Cir. 2019) (stating that, under Virginia and federal trade secrets laws, bad faith requires a claim to have "no chance of success under existing law," but not addressing whether there is an additional subjective prong). This is consistent with our definition of "bad faith" in the similar context of sanctions imposed under a court's inherent authority: "bad faith" requires "(1) that the claims advanced were meritless, (2) that counsel knew or should have known this, and (3) that the motive for filing suit

was for an improper purpose such as harassment." *United States v. Llanez-Garcia*, 735 F.3d 483, 492 (6th Cir. 2013).

The district court did not abuse its discretion by finding that, here, all possible standards were met. Magnesium Machine's claim was baseless, the company knew it was baseless, and it acted with improper motive.

First, the claim was baseless; we agree with the district court that "[m]ishandling of confidential third-party discovery does not equate to misappropriation of a trade secret." The Agreement here was "obtained by legal means," "not restricted by the rules," and was not shared beyond the attorney and his client.

Second, Magnesium Machine knew this when it filed the action. The district court found that Magnesium Machine was "well aware" that the alleged trade secret had been received "through legitimate discovery means" and had "not been distributed further." Magnesium Machine notified Terves of its belief that the Agreement contained secret information, and Terves "voluntarily took measures to protect" it. And Magnesium Machine later admitted that the Agreement didn't actually contain the elaborate trade secrets presented in its complaint, but just a three-word phrase ending in "Patent." The district court called Magnesium Machine's complaint "an intentional exaggeration/misrepresentation of the alleged disclosure at issue." There is no reason that, upon seeing the three-word phrase, Terves or its counsel would have known it possessed any trade secret. So the misappropriation claim was "at best intentionally misleading, and at worst, intentionally deceptive."

Finally, the district court did not err by finding that Magnesium Machine acted with "improper motive," based on the "extraordinary means" by which it prosecuted the case. Magnesium Machine wasn't forthcoming in its claim for ex parte emergency relief. It exaggerated

the content of the "trade secret," intentionally muddled the timeline, and claimed that Terves lied. It's not unreasonable to conclude that Magnesium Machine acted with improper motive when it failed to object for nearly two weeks after it had learned that the Agreement had been handed over, and then reacted only when it was served with its own subpoena. Litigation shenanigans like these are the core of "bad faith." *See BDT Prods., Inc. v. Lexmark Int'l, Inc.*, 602 F.3d 742, 754 (6th Cir. 2010).

Magnesium Machine argues that the district court's bad faith finding merely replicates its decision on the merits. But the district court explicitly based its findings on both the "circumstances" leading up to the claim and the "extraordinary means" by which the claim was brought, neither of which has to do with the merits. We give substantial deference to a district court's award of attorney's fees because of its "superior understanding of the litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Here, the judge presided over the related patent case and the ex parte seizure hearing; and the attorneys for Magnesium Machine are also the attorneys for Ecometal. The district judge was in the best position to determine whether Magnesium Machine's actions were an improper use of the courts. We see no reason to reverse the district court's finding of bad faith.

B.

A court may impose personal liability on an attorney who "multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. Sanctions are warranted when an attorney engages in conduct that "falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party." *Holmes v. City of Massillon*, 78 F.3d 1041, 1049 (6th Cir. 1996) (quotation marks omitted).

The district court found that Magnesium Machine's attorneys, the law firm Dunlap Codding, vexatiously multiplied the proceedings by asking for "truly exceptional relief" in an intentionally misleading manner and by continuing the litigation after the evidentiary hearing "should have ended the case." It's not an abuse of discretion to impose sanctions when an attorney refuses to voluntarily dismiss a meritless claim, unreasonably protracting the proceedings. *See Bailey v. Papa John's USA, Inc.*, 236 F. App'x 200, 205 (6th Cir. 2007).

Dunlap Codding, argues that the "court's order does not allow for any possibility that [Magnesium Machine] may have continued to have a good-faith belief in the merits of its claims." Dunlap Codding then rehashes many of the same meritless arguments that it made in support of the misappropriation claim. But the district court did not abuse its discretion by finding that Dunlap Codding never had a good-faith belief in the merits of its claim when the claim was objectively specious and brought in an intentionally misleading way.

Finally, Dunlap Codding argues that § 1927 doesn't authorize the imposition of sanctions on a law firm, rather than against individual attorneys. But that argument wasn't raised in the district court and is forfeited. *See Taft Broad. Co. v. United States*, 929 F.2d 240, 243–44 (6th Cir. 1991). Thus, the district court did not abuse its discretion by finding that Dunlap Codding also owed attorney's fees.

\* \* \*

We AFFIRM the district court's dismissal of Magnesium Machine's misappropriation claim and its award of attorney's fees to Terves under the trade secrets acts and § 1927.