RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 23a0193p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

ALICIA M. PEDREIRA; JOHANNA W.H. VAN WIJK-BOS;
ELWOOD STURTEVANT,[*]

         *Plaintiffs-Appellees*,

    *v.*

SUNRISE CHILDREN'S SERVICES, INC., fka Kentucky
Baptist Homes for Children, Inc.,

         *Defendant-Appellant*,

ERIC FRIEDLANDER, in his official capacity as the
Secretary of the Cabinet for Health and Family
Services; KERRY B. HARVEY, in his official capacity as
the Secretary of the Justice and Public Safety Cabinet,

         *Defendants-Appellees*.

No. 21-5857

> Appeal from the United States District Court for the Western District of Kentucky at Louisville.
> No. 3:00-cv-00210—Charles R. Simpson III, District Judge.

Decided and Filed: August 22, 2023

Before: STRANCH, BUSH, and LARSEN, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:** John O. Sheller, Jeffrey A. Calabrese, Steven T. Clark, STOLL KEENON OGDEN PLLC, Louisville, Kentucky, for Appellant. Stephen K. Wirth, David B. Bergman, R. Stanton Jones, ARNOLD & PORTER KAYE SCHOLER LLP, Washington, D.C., Daniel Mach, ACLU FOUNDATION, Washington, D.C., Alex J. Luchenitser, AMERICANS UNITED FOR

---

[*]The lawsuit originally included a fourth plaintiff, Paul Simmons, who passed away during the pendency of the appeal according to plaintiffs' brief.

SEPARATION OF CHURCH AND STATE, Washington, D.C., Corey M. Shapiro, Heather L. Gatnarek, ACLU OF KENTUCKY FOUNDATION, INC., Louisville, Kentucky, for Kentucky Taxpayers Appellees.   Wesley W. Duke, LeeAnne Applegate, COMMONWEALTH OF KENTUCKY, Frankfort, Kentucky, for Kentucky Officials Appellees.

STRANCH, J., delivered the opinion of the court in which BUSH and LARSEN, JJ., joined.  BUSH, J. (pp. 17–19), delivered a separate concurring opinion.

––––––––––––––––––

**OPINION**

––––––––––––––––––

JANE B. STRANCH, Circuit Judge.  This is the fourth appeal in the case before this court.  We summarized the claim in the last appeal: "Kentucky taxpayers sued the State of Kentucky and Sunrise Children's Services, a religiously affiliated organization, alleging that Kentucky violated the Establishment Clause by paying Sunrise for religious services that the taxpayers allege Sunrise imposes on children in State custody." *Pedreira v. Sunrise Child.'s Servs., Inc.*, 826 F. App'x 480, 482 (6th Cir. 2020).  After proceedings resumed, the taxpayers and Kentucky, without Sunrise, entered into a settlement agreement in which the taxpayers agreed to dismiss the suit in exchange for Kentucky's agreement to make certain changes to its foster-care system, and jointly moved to dismiss the case with prejudice.  The district court granted the motion, dismissed the case, and refused to review the settlement agreement.  Sunrise appealed. We **AFFIRM** the decision below.

## I.  BACKGROUND

Over 20 years ago, individual plaintiffs and Kentucky taxpayers sued Kentucky officials and Sunrise Children's Services (formerly known as Kentucky Baptist Homes for Children), alleging employment discrimination under federal and state law and violations of the Establishment Clause of the First Amendment.  The district court granted Defendants' motion to dismiss the suit for lack of standing.  We reversed as to the Establishment Clause claims, holding that Plaintiffs did have standing as Kentucky taxpayers to bring those claims.  *See Pedreira v. Ky. Baptist Homes for Child., Inc.* (*Pedreira I*), 579 F.3d 722, 725 (6th Cir. 2009).

On remand, in 2012, Plaintiffs filed the operative Second Amended Complaint, which stated only one claim for relief against Kentucky—not against Sunrise—for violating the Establishment Clause.  Sunrise remained a named defendant pursuant to Federal Rule of Civil Procedure 19.  Over the next decade, Plaintiffs and Kentucky made numerous attempts to settle this case.

**A.  The 2013 Agreement**

In 2013, Plaintiffs and Kentucky (also referred to as the Settling Parties) entered a settlement agreement (the 2013 Agreement) to resolve the case, without Sunrise's approval.  The 2013 Agreement denied that Kentucky or Sunrise violated the Establishment Clause or otherwise violated the rights of children in Sunrise's case, but it required Kentucky to change some of the terms in its standard two-year contracts with Sunrise and other providers and it included monitoring provisions that singled out Sunrise in some ways.  The 2013 Agreement also contemplated the possibility of Kentucky enacting new regulations to implement some of its provisions; Kentucky did not have to guarantee that it would enact or modify any regulation, and failure to do so would not constitute a violation of the agreement.  Plaintiffs promised to dismiss their lawsuit with prejudice and waive any claims based on conduct that occurred before the settlement.  The 2013 Agreement provided that the court that entered it would have exclusive jurisdiction over enforcement, and terms indicated that the agreement was not a "consent decree."  The Settling Parties agreed on the settlement terms and asked the district court to dismiss the suit and retain jurisdiction to enforce the 2013 Agreement.  Sunrise objected and moved to dismiss for lack of jurisdiction.  The court denied Sunrise's motion, granted Plaintiffs' motion to dismiss, entered a dismissal order incorporating the 2013 Agreement, and retained jurisdiction to enforce the order.  Sunrise appealed.

On appeal, we determined that Sunrise had standing to object to and appeal the 2013 Agreement.  *Pedreira v. Sunrise Child.'s Servs., Inc.* (*Pedreira II*), 802 F.3d 865, 869 (6th Cir. 2015).  We reaffirmed Plaintiffs' standing and held that the district court had not abused its discretion by labelling its dismissal a dismissal with prejudice.  *Id.* at 870-71.  But, examining the 2013 Agreement, we found that it had the key attributes of a consent decree, and remanded the case for further consideration, instructing the district court to address whether the 2013

Agreement was fair, reasonable, and consistent with the public interest. *Id.* at 872. Specifically, the district court was to determine whether the consent decree was fair to Sunrise and to allow anyone affected by the decree an opportunity to present evidence and have their objections heard. *Id.*

### B.  The 2015 Amendment

In 2015, the parties to the original agreement entered into an amendment to the settlement agreement (the 2015 Amendment) in order to address concerns about singling out Sunrise for special monitoring.  The 2015 Amendment deleted the monitoring provisions that mentioned Sunrise, replacing them with general language about "any Agency."  The 2015 Amendment also clarified that no regulatory changes were needed to comply with or enforce the agreement, though it did not remove or change language concerning the enactment or modification of regulations.  In other respects, the 2015 Amendment provided that "all the terms of the [2013] Agreement shall remain in full force and effect, and the Parties shall continue to comply with the [2013] Agreement, as amended herein, including during the pendency of any further proceedings in, or relating to dismissal of, the Lawsuit."

Following a change in Kentucky's administration, the newly elected Governor's Office notified Plaintiffs' counsel in April of 2016 that it would not consent to the 2015 Amendment. That June, Plaintiffs separately and individually moved the district court to enter the 2015 Amendment and to dismiss the suit.  Both Kentucky and Sunrise opposed, arguing that the 2015 Amendment was unenforceable for lack of consent and that the district court lacked authority to enter and enforce it.   The district court determined that, regardless of the change of administration, the 2015 Amendment was a viable proposed consent decree and that it would schedule the matter for a fairness hearing.

Sunrise moved for reconsideration, challenging the 2015 Amendment's lawfulness and contending that it could not be lawfully implemented without modifying or expanding Kentucky regulations. The court granted that motion, concluding that the 2015 Amendment violated Kentucky law because it required enactment of new or modified administrative regulations for implementation.  *See Pedreira v. Sunrise Child.'s Servs., Inc.*, No. 3:00-CV-210, 2018 WL

2435424, at *12 (W.D. Ky. May 30, 2018).  Plaintiffs filed an interlocutory appeal, and while it was pending, there was another change of administration in Kentucky.

We upheld our jurisdiction to hear the appeal and, for the third time, held that Plaintiffs had standing to bring their Establishment Clause claim.  *Pedreira v. Sunrise Child.'s Servs., Inc.* (*Pedreira III*), 826 F. App'x 480, 486 (6th Cir. 2020).  We next reviewed the court's refusal to enter the 2015 Amendment, which functioned as a consent decree.  The issue of Kentucky's consent was not dispositive, but we determined that multiple provisions of the 2015 Amendment required new regulations or modifications to existing regulations for implementation, which meant the 2015 Amendment violated Kentucky law.  *Id.* at 489-95.  So, we affirmed the district court's ruling, and proceedings resumed.  *Id.* at 496.

### C.  The 2021 Agreement

Upon issuance of our mandate, Plaintiffs and Kentucky jointly moved to stay proceedings pending further settlement negotiations.  At this point, Sunrise's eight-year-old motion for summary judgment—which Kentucky had originally moved to join before entering the 2013 Agreement with Plaintiffs—remained pending.  The district court denied the motion to stay and ordered Plaintiffs to respond to Sunrise's motion for summary judgment.  They did so in January of 2021; for its part, Kentucky withdrew its motion for joinder and explained that it had reached a settlement in principle with Plaintiffs.  A month later, the Settling Parties jointly moved to dismiss the case with prejudice based on their entry into a new settlement agreement (the 2021 Agreement).

According to the Settling Parties, the 2021 Agreement cured the 2015 Amendment's defects and fully disposed of Plaintiffs' claims.  Under the terms of the 2021 Agreement, Kentucky agreed to pursue new regulations in good faith and in accordance with Kentucky's rulemaking process, and certain provisions of the 2021 Agreement would not take effect unless those regulations were adopted.  Also, the Settling Parties emphatically did "*not*" seek to have the district court retain jurisdiction for enforcement, or to incorporate the 2021 Agreement as part of the court's order of dismissal.  Describing the 2021 Agreement as "a purely private

contract" between the Settling Parties that marked the end of "any dispute" between them, the Settling Parties' motion was limited to a request for voluntary dismissal with prejudice.

The joint motion emphasized that, per Sixth Circuit precedent, Plaintiffs could not be forced to litigate claims they wished to voluntarily dismiss with prejudice. *See Smoot v. Fox*, 340 F.2d 301, 302-03 (6th Cir. 1964) (per curiam). The Settling Parties also maintained that Sunrise had no legally cognizable interest in forcing the litigation to proceed against the other parties' wishes and in the face of a binding settlement agreement, given that the 2021 Agreement imposed no legal duties or obligations on Sunrise, and there was no longer any claim in the case against Sunrise.

Sunrise opposed, arguing that it had standing to object to the joint motion and that there was no reason for the court to consider the joint motion before resolving Sunrise's earlier-filed motion for summary judgment. Distinguishing *Smoot*, Sunrise contended that the district court was not required to grant the joint motion. And Sunrise characterized the 2021 Agreement as speculative, unenforceable, unlawful, and failing to resolve the dispute underlying the action.

In September of 2021, the district court granted the Settling Parties' joint motion and dismissed the case with prejudice. Noting that the joint motion was filed by "the parties to the sole remaining claim," Plaintiffs' Establishment Clause claim against Kentucky, the district court held that *Smoot* controlled and that it had no discretion to deny the motion. The district court also refused to address the terms of the 2021 Agreement, which was not properly before it for review.

Sunrise timely appealed, arguing that the district court (1) was not required to grant the joint motion for voluntary dismissal automatically, (2) erred in concluding that it was precluded from reviewing the terms of the 2021 Agreement, and (3) erred in granting the joint motion because the 2021 Agreement that it was premised on was unenforceable.

## II. ANALYSIS

We review the district court's dismissal with prejudice for abuse of discretion. *See Bridgeport Music, Inc. v. Universal-MCA Music Publ'g, Inc.*, 583 F.3d 948, 953 (6th Cir. 2009).

"It is an abuse of discretion for the district court to rely on erroneous findings of fact, apply the wrong legal standard, misapply the correct legal standard, or make a clear error in judgment." *Id.* (citing *Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 522 (6th Cir. 2006)).

## A. The District Court's Discretion to Dismiss the Case

### 1. *Smoot v. Fox*

Because the district court invoked *Smoot v. Fox*, 340 F.2d 301 (6th Cir. 1964) (per curiam), in holding that it had no discretion to deny the Settling Parties' joint motion to dismiss with prejudice, we begin there.

In *Smoot*, a per curiam decision, we granted a petition for a writ of mandamus against a district court that had denied the plaintiff's motion to dismiss his case with prejudice. *Id.* at 303. The plaintiff, Smoot, was a political pundit and broadcaster who sued the League of Women Voters and some of its officers and members, alleging that the League had libeled him in a letter published in a newspaper and in a monthly bulletin printed by the League. *Id.* at 302. After the case was set for trial, Smoot's attorney moved for a continuance based on an upcoming vacation. *Id.* The court denied the motion, Smoot's counsel withdrew, and subsequent counsel moved to dismiss the case with prejudice. *Id.* The court denied that motion too, so Smoot petitioned the Sixth Circuit for a writ of mandamus ordering the district court to dismiss his case with prejudice. *Id.*

Acknowledging that the case had "created a great deal of public interest" and "generated considerable heat between the parties," our concern was with Smoot's legal right to have the case dismissed and our "right or duty . . . to intervene." *Id.* We explained that the discretionary language of Federal Rule of Civil Procedure 41(a)(2) contemplates a plaintiff's dismissal without prejudice,[1] but found no precedent "where a plaintiff, upon his own motion, was denied the right

---

[1]At the time, Rule 41(a)(2) stated, "Except as provided in paragraph (1) of this subdivision of this rule, an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper. . . . Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice." Fed. R. Civ. P. 41(a)(2) (1963). The current version provides, in very similar language: "Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper. . . . Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice."

to dismiss his case *with* prejudice." *Id.* (emphasis added). "A plaintiff should have the same right to refuse to offer evidence in support of his claim" as a defendant and "must suffer the consequences" if he exercises that right: a "judgment against him and . . . in favor of the defendants." *Id.* at 303. Dismissal with prejudice acts as that consequence because it is a "complete adjudication of the issues presented by the pleadings" and is "a bar to a further action between the parties." *Id.* "An adjudication in favor of the defendants, by court or jury, can rise no higher than this." *Id.* Smoot's lawyer could not be required to litigate on his behalf "when he considers he has no cause of action or *for any reason* wishes to dismiss his action with prejudice." *Id.* (emphasis added).

Despite our reluctance to grant Smoot's petition for a writ of mandamus, especially where "resorted to as a substitute for appeal," denying it would result in a multi-week, "useless" trial with an "unwilling plaintiff" before an "over-crowded" district court. *Id.* We thus held that the district court had abused its discretion in denying Smoot's motion for dismissal with prejudice, and granted his petition.

Since 1964, we have had few occasions to expound further on *Smoot*'s principles. One unpublished opinion noted that there may be "an exception" to the *Smoot* doctrine, but said only that the appellant had not shown "substantial injustice" or "clearly indicate[d] why he oppose[d] the dismissal with prejudice at all." *CompuServe Inc. v. Saperstein*, 172 F.3d 47, 1999 WL 16481, at *2 (6th Cir. Jan. 8, 1999) (unpublished table decision); *see also Burpo v. Algoma Steel Corp.*, 772 F.2d 905, 1985 WL 13565, at *2 n.3 (6th Cir. Aug. 29, 1985) (per curiam) (unpublished table decision) ("*Smoot* upheld a plaintiff's prerogative to dismiss with prejudice."). District courts within the Circuit have applied *Smoot* consistently over the last 60 years to hold that when a plaintiff moves to dismiss a case with prejudice, it is an abuse of discretion for a district court to deny that request. *See, e.g.*, *York v. Ferris State Univ.*, 36 F. Supp. 2d 976, 979 (W.D. Mich. 1998); *Degussa Admixtures, Inc. v. Burnett*, 471 F. Supp. 2d 848, 851-52 & 852 n.1 (W.D. Mich. 2007), *aff'd*, 277 F. App'x 530 (6th Cir. 2008); *Lum v. Mercedes Benz, USA, L.L.C.*, 246 F.R.D. 544, 545 (N.D. Ohio 2007); *see also D & M Millwork, Inc. v. Elite Trimworks Corp.*, No. 2:08-0101, 2010 WL 547154, at *3 (M.D. Tenn. Feb. 10, 2010) (collecting cases).

Faced with this hurdle, Sunrise seeks to distinguish *Smoot*'s factual and procedural circumstances. And, citing primarily out-of-Circuit precedent, Sunrise argues that *Smoot* does not automatically require district courts to grant voluntary motions for dismissal with prejudice. Instead, the district court should have considered the "grave" prejudice that would result to Sunrise from its ruling. We address these arguments in turn.

### 2. *Smoot*'s Procedural Posture and Rationale

Sunrise maintains that *Smoot* is inapposite due to its unusual procedural posture. A multi-week trial was imminent, and plaintiff's counsel believed that he would be unable to establish a necessary element of his claim. 340 F.2d at 302-03. Denying Smoot's petition and affirming the district court would have forced him to pursue a futile claim. *Id.* Those considerations were critical to our decision in *Smoot*, Sunrise argues, whereas the circumstances here were quite different: if the district court had denied the Settling Parties' motion, it would have proceeded to resolve Sunrise's fully briefed motion for summary judgment, which Plaintiffs strongly opposed. In other words, Sunrise claims this case lacks *Smoot*'s procedural urgency.

It is true that the procedural posture here is not the same as *Smoot*'s. But Sunrise conflates the *Smoot* court's rationale for concluding that plaintiffs have the right to dismiss their cases voluntarily with prejudice with its justification for granting Smoot's petition for a writ of mandamus. The court's finding as to voluntary dismissal with prejudice was grounded in legal reasoning. Specifically, because plaintiffs have the same right to refuse to prosecute their case that defendants have to defend theirs, they are subject to the same consequences—a judgment against them. 340 F.2d at 303. Dismissal with prejudice is a complete adjudication of the issues and serves that function. *Id.* It makes no difference whether a plaintiff moves to dismiss with prejudice because he "considers he has no cause of action" or "for any reason" otherwise. *Id.* The *Smoot* court's discussion of the impending trial and far-flung witnesses, on the other hand, provided justification for granting Smoot's petition for a writ of mandamus, which was and remains a "'drastic and extraordinary' remedy 'reserved for really extraordinary causes.'" *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004) (quoting *Ex parte Fahey*, 332 U.S. 258, 259-60 (1947)). We are unpersuaded that *Smoot*'s procedural posture is distinct in a way that renders it distinguishable on this front. Regardless of *Smoot*'s age and per curiam status, it

is a published decision and remains binding on this Court.  *See* 6 Cir. R. 32.1(b); *Salmi v. Sec'y of Health & Hum. Servs.*, 774 F.2d 685, 689 (6th Cir. 1985).

### 3. Applying *Smoot*

Sunrise next argues that we should not interpret *Smoot* to require that *every* motion for voluntary dismissal with prejudice be granted automatically without considering the equities of the case.

We have said that "[t]he primary purpose of [Rule 41(a)(2)] in interposing the requirement of court approval is to protect the nonmovant from unfair treatment."[2]  *Grover by Grover v. Eli Lilly & Co.*, 33 F.3d 716, 718 (6th Cir. 1994) (citing *Ikospentakis v. Thalassic S.S. Agency*, 915 F.2d 176, 177 (5th Cir. 1990)).  Though this comment was included in the context of analyzing a dismissal without prejudice, *id.*, it comports with the Rule's overall organization and language, which both emphasize court oversight.  Before the opposing party serves either an answer or a motion for summary judgment, or upon all parties' stipulation of dismissal, plaintiffs can dismiss an action "without a court order."  Fed. R. Civ. P. 41(a)(1)(A).  Otherwise—whether the dismissal is with or without prejudice—a court order is required, "on terms that the court considers proper."  *Id.* 41(a)(2).  And, further emphasizing the Rule's goal of protecting nonmovants, any dismissal of the plaintiff's action must not affect the pendency of counterclaims that the defendant has raised.  *Id.*  As *Smoot* itself recognized, the rule is "clearly discretionary." 340 F.2d at 302; *see also Est. of Chubb v. Daimler Trucks N. Am. LLC*, 850 F. App'x 358, 361 (6th Cir. 2021) ("With appropriate explanation, a district court is free to exercise its discretion to dismiss with or without prejudice and to determine the terms of its dismissal." (citing *Grover*, 33 F.3d at 718)).

---

[2]Some district courts have interpreted *Grover* as instructing that, whether a plaintiff's voluntary motion for dismissal is with or without prejudice, the court "should not approve voluntary dismissal if the defendant will suffer 'plain legal prejudice.'"  *E.g.*, *Crenshaw v. Portfolio Recovery Assocs., LLC*, 433 F. Supp. 3d 1057, 1060 (W.D. Ky. 2020) (applying plain-prejudice analysis to motion for voluntary dismissal with prejudice); *Johnson v. Lucas*, No. CIV A 05-316-JBT, 2006 WL 3488942, at *3 (E.D. Ky. Dec. 1, 2006) (same).  We do not read *Grover* to speak in such definitive terms.  *Grover* reviewed a district court's dismissal without prejudice for abuse of discretion, which is "found only where the defendant would suffer 'plain legal prejudice' as a result of a dismissal *without prejudice*, as opposed to facing the mere prospect of a second lawsuit."  33 F.3d at 718 (emphasis added).  Finding that "the law clearly dictate[d] a result for the defendant," *Grover* concluded that it was "unfair" to subject the defendant "to continued exposure to potential liability," and that dismissal should have been *with* prejudice.  *Id.* at 718-19.

Reading Rule 41's language, other circuits have held that sufficiently important third-party interests should be considered when parties move for voluntary dismissal with prejudice. In *ITV Direct, Inc. v. Healthy Solutions, LLC*, 445 F.3d 66 (1st Cir. 2006), an intervenor-plaintiff had asserted claims against a cross-plaintiff and a cross-defendant, who had jointly moved to dismiss their claims against each other. *Id.* at 69. The claim against the cross-defendant was contingent on the cross-plaintiffs' claim against the cross-defendant, so the First Circuit found that dismissal of the cross-plaintiffs' claim with prejudice would have foreclosed the intervenor's claim, and it affirmed the district court's refusal to grant the motion. *Id.* at 70-71.

Faced with similarly complex circumstances, the Tenth Circuit likewise declined to adopt a rigid interpretation of Rule 41(a)(2). *County of Santa Fe v. Pub. Serv. Co.* (*Santa Fe County*), 311 F.3d 1031, 1049 (10th Cir. 2002). There, an intervenor-plaintiff sought to use a writ of mandamus to make a plaintiff county enforce its laws against the defendant, and granting the plaintiff and defendant's joint motion for dismissal with prejudice would have foreclosed the intervenor's mandamus petition. *Id.* at 1047-50. The court explained that, "[i]n most cases, the normal analysis," which considers the prejudice that dismissal will cause to the opposing party, "will result in the district court granting the plaintiff's motion to dismiss with prejudice." *Id.* at 1049. "But there will be circumstances where granting [the motion] may adversely affect the defendant or, more likely, other parties to the litigation. In such situations, a blanket rule that the court must grant the plaintiff's motion would lead to injustice." *Id.* The Tenth Circuit viewed the case before it as an example of this "rare circumstance."[3] *Id.*

In *Smoot*, there were no third parties, only the plaintiff (Smoot) and the collection of defendants (the League and some of its officers and members). *See Smoot v. League of Women Voters of Grand Traverse Area of Mich.*, 36 F.R.D. 4, 4 (W.D. Mich. 1964). So it made sense, Sunrise argues, that denying Smoot's voluntary motion to dismiss with prejudice was an abuse of

---

[3]In addition to these two cases, Sunrise cites *Wheeler v. American Home Products Corp. (Boyle-Midway Div.)*, 582 F.2d 891, 895-96 (5th Cir. 1977), as evidence that third-party interests must be considered when a party moves to dismiss with prejudice. *Wheeler* is inapposite; there, intervenor-plaintiffs' claims would have been "stipulate[d] away" by an entry of dismissal that they had not agreed to. *Id.* at 896. In its discussion of Rule 41(a)(2), the Fifth Circuit explained that the Rule's articulation of dismissal "'at the plaintiff's instance' refers only to an 'instance' by All plaintiffs, including intervenors." *Id.* Whether all plaintiffs moved to dismiss is not at issue here.

discretion, because the defendants' interests were fully protected and vindicated, and no other party's interests were involved. Here, Sunrise claims that dismissal affects the interests of another party in the case (Sunrise itself) and of other non-parties (private childcare providers impacted by the 2021 agreement).

Plaintiffs suggest that the *Smoot* district court *did* consider third-party interests because, in denying Smoot's counsel's request for a continuance, it emphasized the potential chilling effect that delaying trial could have not only on the defendants in the case but also on "branches of the League all over the country." *Id.* at 5. The suit's pendency "quite conceivably prevent[ed] the free interchange of ideas in the public marketplace," and "the practical result [was] that [Smoot] and those of like mind [were] free to continue speaking out, while those opposed to that line of thought [were] not so at liberty until the question of libel here presented [was] settled." *Id.* But the court considered third-party interests only in the context of Smoot's requested continuance—not his later-filed motion to dismiss.

The record does reveal that the *Smoot* defendants opposed the motion to dismiss with prejudice "on the theory that they were entitled to have a jury impaneled to hear their side of the case." *Smoot v. Fox*, 353 F.2d 830, 831 (6th Cir. 1965). We also know that the district court denied the motion, after defendants' opposition and interests were asserted before it. And despite defendants' voiced concerns, we held that it was an abuse of discretion for the district court to have done so, emphasizing that "adjudication in favor of the defendants, by court or jury, can rise no higher" than a dismissal with prejudice. *Smoot*, 340 F.2d at 302-03. But *Smoot* had no need to address asserted third-party interests in its read of Rule 41(a)(2).

Given the relatively simple arrangement of parties in *Smoot*, it is no surprise that the *Smoot* court's analysis spoke directly to the situation before it. Modern litigation involves ever-more complex configurations of parties, and courts may face circumstances that require a fuller inquiry of a voluntary motion to dismiss with prejudice than that conducted by the *Smoot* court. *See, e.g.*, *In re Duramax Diesel Litig.*, No. 17-11661, 2020 WL 1685462, at *2-3 (E.D. Mich. Apr. 7, 2020) (discussing limits of *Smoot* when some but not all putative class representatives had provided minimal discovery, then sought to dismiss their claims, creating the possibility of an "atypical class"). Although it is unlikely that dismissing an action with prejudice might so

unfairly affect a defendant that a voluntary motion for such dismissal should be denied, *see Smoot*, 340 F.2d at 303, there may be rare cases in which dismissal with prejudice adversely affects the interests of defendants or third parties in a way that causes them plain legal prejudice. *See ITV Direct*, 445 F.3d at 70-71; *Santa Fe County*, 311 F.3d at 1049-50; *Grover*, 33 F.3d at 718. Rule 41(a)(2)'s emphasis on court oversight only affirms the need for courts to use their discretion in considering motions to dismiss with prejudice, and to impose terms and conditions on dismissals as they see fit. *See Bridgeport Music, Inc. v. London Music, U.K.*, 345 F. Supp. 2d 836, 841 (M.D. Tenn. 2004), *aff'd*, 226 F. App'x 491 (6th Cir. 2007).

This case, however, is not that "rare circumstance" in which dismissal with prejudice might so adversely impact Sunrise as to merit reversal of the district court's judgment. *Santa Fe County*, 311 F.3d at 1049. Sunrise's claimed prejudice consists of an asserted excessive delay and lack of diligence by the Plaintiffs in prosecuting their case, its pending motion for summary judgment, and the time and effort it has spent litigating this case. Sunrise has not identified any claims or defenses that would be foreclosed by dismissal.

A review of the record yields no evidence to support Sunrise's allegations of excessive delay or lack of diligence. This case has been vigorously litigated by both sides since 2000, and, as early as 2008, the magistrate judge overseeing discovery described Sunrise's own motion to stay all discovery as part of its "consistent attempt to stymie discovery these many years." The court "reluctantly" concluded that Sunrise itself had "adopted a litigation strategy of minimizing disclosures and maximizing objections, and of carefully conceived delay," and observed that it had "consistently resisted disclosing virtually any information in discovery." We will not rehash the parties' litigation tactics further, but Sunrise's attempt to cast Plaintiffs in a dilatory light for seeking stays of litigation (characterized by Sunrise as "delay after delay") is, at best, puzzling. It is routine for parties to ask that a case be stayed pending its appeal or settlement discussions, and it is normal for courts to use their discretion to grant or deny such requests. That is what happened here. *See* R. 81 (2002 order staying proceedings pending resolution of Plaintiffs' interlocutory appeal, except as to issue of taxpayer standing); R. 120 (2003 order denying Plaintiffs' motion to lift stay); R. 497 (2013 order granting Settling Parties' motion to stay case for less than three months pending settlement negotiations); R. 505 (2013 order affirming stay of

case pending finalization of settlement in principle); R. 614 (2020 order denying Settling Parties' motion to stay case pending settlement negotiations). That there were multiple stays does not make them improper.

Nor was it inappropriate for the court to decide the motion to dismiss rather than ruling on Sunrise's motion for summary judgment. *See Degussa Admixtures*, 471 F. Supp. 2d at 852 n.1 (granting plaintiff's motion to dismiss with prejudice and denying defendants' motion for summary judgment as moot), *aff'd*, 277 F. App'x 530 (6th Cir. 2008); *Lum*, 246 F.R.D. at 545 (same). The result was functionally the same, as the *Smoot* court explained, because "[d]ismissal of an action with prejudice is a complete adjudication of the issues presented by the pleadings and is a bar to a further action between the parties. An adjudication in favor of the defendants, by court or jury, *can rise no higher than this*." 340 F.2d at 303 (emphasis added); *see also Malibu Media, LLC v. Redacted*, 705 F. App'x 402, 409 (6th Cir. 2017) ("The existence of a pending motion for summary judgment is not dispositive [in evaluating plain legal prejudice].").

The parties have spent considerable time and resources litigating this case, and if the court's dismissal had been *without* prejudice, this factor might weigh in Sunrise's favor. In that situation, Sunrise would have expended great effort but conceivably remain subject to liability. *See Schwarz v. Folloder*, 767 F.2d 125, 129 (5th Cir. 1985). But it is unclear how denying the joint motion for dismissal *with* prejudice would put Sunrise in a better position; Sunrise itself characterizes Plaintiffs' opposition to its motion for summary judgment as "vigorous," and there is certainly no guarantee that Sunrise would prevail on that motion. Instead, dismissal with prejudice is an appropriate resolution that adjudicates the only remaining claim in the case. As we have previously said, "[w]hat Sunrise appears to want is not merely an order from the district court dismissing this case with prejudice, but a published opinion from this court holding the plaintiffs' claims invalid as a matter of law." *Pedreira II*, 802 F.3d at 871. Sunrise is not entitled to what it seeks, and the district court did not abuse its discretion by entering the order of dismissal rather than decide the merits of Sunrise's motion.

Finally, Sunrise recycles an argument that dismissal here will in fact operate as dismissal *without* prejudice because other taxpayer plaintiffs may later sue Kentucky or Sunrise, or the

Plaintiffs in this case may later bring the same claim based on events occurring after the 2021 Agreement becomes effective.  We have already considered and rejected this contention:

> Sunrise overlooks that both of those things would be true of a dismissal with prejudice: an adjudication on the merits normally lacks res-judicata effect against persons not a party to the suit giving rise to it; and a dismissal with prejudice normally does not bar claims based on conduct that occurs after the dismissal is entered.  Sunrise therefore gives us no reason to think the dismissal here was without prejudice—and we otherwise think the dismissal was with prejudice.

*Pedreira II*, 802 F.3d at 870-71 (citations omitted).  *See also Grover*, 33 F.3d at 718 (explaining that "facing the mere prospect of a second lawsuit" is not plain legal prejudice).

One last note: forcing plaintiffs to litigate a case against their will poses all manner of practical problems, especially where parties have settled and their settlement moots the action.  *See Pettry v. Enter. Title Agency, Inc.*, 584 F.3d 701, 703 (6th Cir. 2009).  It remains good sense and good law that plaintiffs, like defendants, should be able to "refuse to offer evidence in support of [their] claim[s]" and likewise "suffer the consequences" of their decision.  *Smoot*, 340 F.2d at 303.  Here, regardless of how the district court applied *Smoot*, it did not abuse its discretion in granting the Settling Parties' joint motion to dismiss the action voluntarily with prejudice.

**B.  The District Court's Jurisdiction to Review the 2021 Agreement**

Finally, pointing to *Pedreira II* and *Pedreira III*, Sunrise claims that the court's refusal to review the 2021 Agreement violates both the mandate rule and the rule of the case.  In essence, it argues that because we have previously permitted Sunrise to challenge terms of the Settling Parties' 2013 Agreement and 2015 Amendment, and because Sunrise believes the 2021 Agreement to be unconstitutional, the 2021 Agreement "demand[s] review by the courts" and the district court should have considered Sunrise's objections to it.

The district court lacked jurisdiction to conduct the review Sunrise demands.  Both the 2013 Agreement and the 2015 Amendment were consent decrees, *see Pedreira II*, 802 F.3d at 871; *Pedreira III*, 826 F. App'x at 486, but the 2021 Agreement is not.  The district court did not enter the 2021 Agreement, incorporate it into its judgment, or retain jurisdiction to enforce it.

*See McAlpin v. Lexington 76 Auto Truck Stop, Inc.*, 229 F.3d 491, 501 (6th Cir. 2000) (a federal district court lacks jurisdiction to enforce a settlement agreement that ends litigation unless the court "expressly retained jurisdiction to enforce the settlement agreement" or "incorporated the terms of the settlement into the dismissal order" (quoting *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 380-81 (1994)).  Instead, the 2021 Agreement was a private agreement between the Settling Parties that did not impose any legal duties or obligations on Sunrise.  *See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 604 n.7 (2001) ("Private settlements do not entail the judicial approval and oversight involved in consent decrees."); *see also Kokkonen*, 511 U.S. at 380 ("No case of ours asserts, nor do we think the concept of limited federal jurisdiction permits us to assert, ancillary jurisdiction over any agreement that has as part of its consideration the dismissal of a case before a federal court.").  The court properly declined to review the 2021 Agreement, and so do we.

## III.  CONCLUSION

For the foregoing reasons, we **AFFIRM** the decision of the district court.

---

**CONCURRENCE**

---

JOHN K. BUSH, Circuit Judge, concurring.  I agree that the district court's judgment should be affirmed.  I write separately, however, to clarify what I understand the majority's holding to be.  *Smoot v. Fox* does not bar district courts from considering legal prejudice to a third party when deciding whether to grant a plaintiff's motion to voluntarily dismiss the complaint with prejudice under Federal Rule of Civil Procedure 41(a)(2).  340 F.2d 301 (6th Cir. 1964) (per curiam).  Indeed, as the majority opinion notes, the *Smoot* court had no reason to consider the impact on third-party interests because none were asserted in that case.  Majority Op. at 12; *id.* at 301.  The district court here thus misinterpreted *Smoot* to preclude its consideration of Sunrise's objections when it granted the Settling Parties' motion for voluntary dismissal with prejudice.  Nonetheless, we affirm the district court today because Sunrise has not established sufficient legal prejudice for us to find that the district court abused its discretion.

Sunrise requests that this court enter an order directing the district court to consider the merits of the outstanding motion for summary judgment, but Sunrise has no legal entitlement to a ruling on that motion.  The jurisdiction of federal courts is limited to cases and controversies. U.S. Const. art. III, § 2.  This requirement ensures that the federal judiciary resolves only actual and concrete disputes that have "direct consequences on the parties involved" once resolved. *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013).  Though a party may vigorously assert the lawfulness of its conduct that is challenged by a lawsuit, a federal court hearing the dispute must assure itself that a ruling on the legal challenge is not an advisory opinion.  *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) ("Under Article III, federal courts do not adjudicate hypothetical or abstract disputes.").

Once the Settling Parties signed the 2021 Agreement, they resolved all facets of their dispute, and the case lost its adversarial posture.  Put differently, a live case or controversy no longer existed for the district court to resolve by considering Sunrise's motion for summary judgment.  *See e.g.*, *Pettrey v. Enter. Title Agency, Inc.*, 584 F.3d 701, 703 (6th Cir. 2009). Though Sunrise would have preferred that the district court first address their motion, the district

court had discretion to forgo ruling on the motion and instead dispose of the case through plaintiffs' voluntary dismissal of the suit. *See generally ACLU of Ky. v. McCreary Cnty.*, 607 F.3d 439, 447 (6th Cir. 2010) (district courts have "broad discretion to manage [their] docket[s]").

Sunrise maintains that it is prejudiced by the terms of the 2021 Agreement. True, the Agreement calls for some potentially significant changes to Kentucky's child services system, several of which Sunrise or others may find objectionable or even injurious. But the Agreement does not legally bind the legislature to make any alteration in existing law or require state administrators to adopt any new, or amend any existing, rule or regulation. Any potential claim based on changes in the system referenced by the Agreement is only that—potential—at this point. The Agreement contemplates only future state action, so the dismissal of this action does not legally prejudice Sunrise. And a future conceivable injury may not stand as a barrier to the district court's dismissal of this suit. Sunrise has the opportunity to rally public support, lobby lawmakers, advocate before state administrators, and, if necessary, legally challenge any future state actions if or when they take place as a result of the Agreement.

Kentucky's course of conduct must comply with federal constitutional provisions that protect Sunrise, including the Free Exercise and Free Speech Clauses of the First Amendment. *See generally New Hope Fam. Servs., Inc. v. Poole*, 966 F.3d 145, 160–61 (2d Cir. 2020) (reversing the dismissal of claims brought by a religious foster care agency under the Free Exercise and Free Speech Clauses); *see also Masterpiece Cakeshop, Ltd v. Colo. Civ. Rts. Comm'n*, 138 S. Ct. 1719, 1731 (2018) (holding that state action based on "hostility to a religion or religious viewpoint" violates the state's obligation under the Free Exercise Clause to "proceed in a manner neutral toward" religion); *Fulton v. City of Phila.,* 141 S. Ct. 1868, 1876–78 (2021) (holding that a state's refusal to contract with a religious foster care agency unless it complied with certain conditions contrary to religious views of that agency violated the Free Exercise Clause). Sunrise also may have rights under Kentucky's Religious Freedom Restoration Act relevant for future claims. *See* Ky. Rev. Stat. § 446.350 ("Government shall not substantially burden" a person's "right to act . . . in a manner motivated by a sincerely held religious belief . . . unless the government proves . . . [that it] has used the least restrictive means to further [a

compelling government] interest."); *see also Maryville Baptist Church, Inc. v. Beshear*, 957 F.3d 610, 612–13 (6th Cir. 2020).  But Sunrise's claims, if they arise, are for a future case, not the present one.

Sunrise no doubt is frustrated to find itself unable to vindicate the legality of its program under the Establishment Clause in this case.  In Sunrise's view, it must be exasperating for the State to agree to a consent decree to resolve claims that Sunrise believes could be defeated through summary judgment.  But federal courts exist not to decide constitutional issues or rule on motions in the abstract.  Plaintiffs have agreed to dismiss all of their claims with prejudice. The district court rightly did not impede that dismissal given that there was no immediate, cognizable injury to Sunrise from the 2021 Agreement.