NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0091n.06

Nos. 23-5447/5451/5453/5454/5455

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Feb 29, 2024
KELLY L. STEPHENS, Clerk

<u>**No. 23-5447**</u>

DWIGHT E. FAULKNER,

    Plaintiff-Appellee,

    *v.*

LARRY DALE MARTIN, II, individually and in his official capacity as an officer with the Horse Cave Police Department; HORSE CAVE POLICE DEPARTMENT; RANDALL CURRY, individually and in his official capacity as Mayor of the City of Horse Cave; CITY OF HORSE CAVE, KENTUCKY,

    Defendants-Appellees,

SEAN HENRY, individually and in his former official capacity as Police Chief with the Horse Cave Police Department,

    Defendant-Appellant,

KENTUCKY LEAGUE OF CITIES INSURANCE SERVICES,

    Intervenor.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY AT BOWLING GREEN

OPINION

<u>**Nos. 23-5451/5453/5454/5455**</u>

JOANIE MARIE FRAZIER (23-5451); JACOB MORRISON AND RENEE POLSTON (23-5453); ANTHONY OWENS AND SHEILA BRYANT (23-5454); JESSE TRENT and STEPHANIE GRIDER (23-5455),

    Plaintiffs-Appellees,

    *v.*

CHRIS TRULOCK, individually and in his former official capacity as an officer with the Horse Cave Police Department; SEAN HENRY, individually and in his former official capacity as Police Chief with the Horse Cave Police Department,

    Defendants-Appellants,

HORSE CAVE POLICE DEPARTMENT; RANDALL CURRY, individually and in his official capacity as Mayor of the City of Horse Cave; CITY OF HORSE CAVE, KENTUCKY; LARRY DALE MARTIN, II, individually and in his official capacity as an officer with the Horse Cave Police Department,

    Defendants-Appellees,

KENTUCKY LEAGUE OF CITIES INSURANCE SERVICES,

    Intervenor.

**Before: KETHLEDGE, READLER, and BLOOMEKATZ, Circuit Judges.**

BLOOMEKATZ, Circuit Judge. Eight plaintiffs filed five separate civil rights lawsuits against Sean Henry and Chris Trulock, who formerly served as police officers for the City of Horse Cave, Kentucky. They alleged that the officers engaged in egregious misconduct, ranging from planting evidence and falsifying charges to groping and using excessive force. As county, state, and national law enforcement investigated the misconduct, Horse Cave's insurance company defended the consolidated lawsuits and ultimately settled them through a confidential, no-fault agreement with each plaintiff. Having settled and relinquished their claims, the plaintiffs moved to dismiss under Federal Rule of Civil Procedure 41(a)(2), which the district court granted with prejudice.

On appeal, Henry and Trulock contend that the district court erred when it dismissed the plaintiffs' lawsuits against them because it prevented them from proving their innocence at trial. They further argue that the insurance company lacked the authority to settle the lawsuits without their consent and did so in bad faith. But Henry and Trulock cannot show any legal prejudice stemming from the settlements, and their claim that the insurance company improperly settled their claims is not properly before us in this appeal regarding the Rule 41(a)(2) dismissal. We affirm.

## BACKGROUND

*Factual Background.* The plaintiffs' allegations in the five separate complaints underlying this consolidated appeal describe a pattern of egregious police misconduct, which we briefly summarize to illustrate the context of the settlement agreements.

Those allegations are as follows. After Anthony Owens posted on social media that Henry and Trulock engaged in unlawful behavior, the officers conspired to falsify charges against him and entered Owens's home without a warrant and used excessive force while arresting him for

2

those fabricated charges. When Sheila Bryant and Joanie Frazier protested, Henry and Trulock violated their civil rights while arresting them as well.

Jacob Morrison cursed at Henry and Trulock, so they arrested him for disorderly conduct, menacing, and terroristic threatening. When Morrison and Renee Polston subsequently encountered Trulock, Morrison muttered "crooked cop," and Trulock retaliated by arresting Morrison on false charges of public intoxication, disorderly conduct, menacing, and contempt of court. Trulock didn't arrest Polston, but he groped her during her sham detention.

Henry and Trulock's reputation for being "crooked" was known by others besides Morrison and Owens. Jesse Trent alleged that he knew of Trulock's bad reputation, so he fled a traffic stop in Horse Cave for a neighboring police jurisdiction rather than face Trulock by himself. But to no avail. After Trent pulled over, Trulock was still there and planted methamphetamine in Trent's car and had him arrested. Next, Trulock followed Stephanie Grider to a property she was leasing from Trent and planted methamphetamine on her, just like he did to Trent. Grider and Trent alleged that Henry was among the Horse Cave officers who not only knew that Trulock planted methamphetamine on them but also authorized that misconduct.

Henry was also among the Horse Cave officers who planted evidence in Dwight Faulkner's home while executing a search warrant that was itself based on false statements. The bogus search led the officers to seize Faulkner's bank accounts, which caused him catastrophic financial losses.

Before their civil actions were filed, local prosecutors dropped all the charges against Owens, Bryant, Frazier, Trent, Grider, Morrison, Polston, and Faulkner. The Horse Cave Police Department became so infamous that the Hart County Sheriff's Office and the Kentucky State Police took over its law enforcement responsibilities. Henry and Trulock became the targets of an FBI investigation. And the Hart County Attorney determined that Henry and Trulock should "have

3

absolutely no involvement" in any pending felony criminal prosecutions. Case No. 1:19-cv-54, R. 66-2, PageID 250–51.

*Procedural History.* The Kentucky League of Cities Insurance Services (KLCIS), Horse Cave's insurer, provided Henry and Trulock with counsel for the plaintiffs' lawsuits. KLCIS litigated the case for several years but faced a significant hurdle: because Henry and Trulock were under federal investigation, they invoked their Fifth Amendment right against self-incrimination in all phases of discovery. Three years after the plaintiffs initiated these actions, the parties, including Henry and Trulock, began mediation. Through the mediation process, KLCIS reached a settlement agreement with each of the plaintiffs. The agreements contained no-fault and confidentiality provisions and required the plaintiffs to relinquish all their claims against Henry and Trulock. But Henry and Trulock objected to the settlements and moved to re-docket the cases through new counsel. The district court ruled against Henry and Trulock, allowing the plaintiffs to voluntarily dismiss their settled claims with prejudice. This timely appeal followed.

## ANALYSIS

We review a district court's order approving a plaintiff's voluntary dismissal under the deferential abuse of discretion standard. *Pedreira v. Sunrise Children's Servs., Inc.*, 79 F.4th 741, 746 (6th Cir. 2023). The district court did not abuse its discretion in dismissing this matter.

The Federal Rules of Civil Procedure require a plaintiff to obtain the district court's approval to voluntarily dismiss a case with prejudice if, as here, an opposing party does not consent to dismissal. Fed. R. Civ. P. 41(a)(2); *see also Pedreira*, 79 F.4th at 747 (explaining that Rule 41(a)(2) contemplates dismissal *without* prejudice but also applies to a plaintiff's motion to voluntarily dismiss *with* prejudice). As we recently reiterated in *Pedreira v. Sunrise Children's Services* (after the briefing closed in this case), a district court may withhold that approval only in

4

the "rare circumstance" when dismissal adversely affects defendants or third parties by causing "plain legal prejudice." *Pedreira*, 79 F.4th at 749–50, 752 (quoting *Cnty. of Santa Fe v. Pub. Serv. Co. of N.M.*, 311 F.3d 1031, 1049 (10th Cir. 2002)). That rule follows from the principle that a plaintiff has the "same right" to refuse to prosecute his case or "offer evidence in support of his claim" as a defendant does; and likewise, he "must suffer the consequences" if he "exercises that right"—namely, a judgment against him in favor of the defendants. *Id.* at 747 (cleaned up).

To upset the plaintiff's right to abdicate his case, nonmovants must demonstrate that their interests in "the issues presented by the pleadings" would be harmed if the matter were dismissed. *Id.* at 751 (quoting *Smoot v. Fox*, 340 F.2d 301, 303 (6th Cir. 1964)). In *Pedreira*, we gave some examples: if dismissal with prejudice would disrupt pendant counterclaims the defendant has raised or foreclose an intervenor's claim or mandamus petition. *Id.* at 749–50 (citing *ITV Direct, Inc. v. Healthy Sols., LLC*, 445 F.3d 66 (1st Cir. 2006), and *Cnty. of Santa Fe*, 311 F.3d at 1049). As is the case with those examples, a showing of legal prejudice would be the "rare circumstance" when it would be within the district court's discretion to deny a plaintiff's motion for voluntary dismissal with prejudice. *Id.* at 749, 750 (citations omitted).

Applying this framework, the district court did not abuse its discretion by granting the plaintiffs' motion to voluntarily dismiss with prejudice under Rule 41(a)(2). Henry and Trulock have not demonstrated that they will suffer any legal prejudice from the dismissal of the plaintiffs' lawsuits. Quite the opposite. By dismissing the claims *with prejudice*, Henry and Trulock receive a "complete adjudication of the issues presented by the pleadings" which forever bars the plaintiffs from prevailing on these claims. *Id.* at 751–52 (explaining that a dismissal with prejudice serves the same legal function as a judgment against the plaintiffs); *Montgomery v. Honda of Am. Mfg., Inc.*, 47 F. App'x 342, 348 (6th Cir. 2002) (same); *see also Smoot*, 340 F.2d at 303

("An adjudication in favor of the defendants, by court or jury, *can rise no higher than* [*a dismissal with prejudice*]."(emphasis added)). As in *Pedreira*, Henry and Trulock have "not identified any claims or defenses that would be foreclosed by dismissal," and therefore this is not one of the "rare cases" in which dismissal with prejudice causes defendants or third parties "plain legal prejudice." *Pedreira*, 79 F.4th at 751.

Henry and Trulock contend that they can show prejudice because the district court's dismissal deprives them vindication at trial. Specifically, they argue that the reputational and professional consequences stemming from the plaintiffs' allegations will persist unless they are able to "clear their names" in court. Appellants' Br., No. 23-5447, App. R. 63, PageID 8. But, as a matter of Kentucky law, settlement agreements are not necessarily an admission of wrongdoing. *Ky. Nat'l Ins. Co. v. Lester*, 998 S.W.2d 499, 504 (Ky. Ct. App. 1999) ("Many disputed claims are settled for a variety of reasons without any admission of actual liability." (quotation omitted)). And, even assuming we could predict who would prevail at trial (we can't), Henry and Trulock's desire to prove their defense to the jury is not the type of legal prejudice our precedent recognizes can prevent voluntary dismissal. Indeed, we held that a district court abused its discretion when it denied a motion to voluntarily dismiss with prejudice "on the theory that [the defendants] were entitled to have a jury impaneled to hear their side of the case." *Pedreira*, 79 F.4th at 750 (quoting *Smoot*, 353 F.2d at 831). The district court did not abuse its discretion here by dismissing in the face of similar arguments.

Unable to show prejudice, Henry and Trulock next urge us to find that KLCIS lacked authority to enter the settlement because the insurance policy required their consent and because KLCIS acted in bad faith by prioritizing its own business interests over their desire to go to trial. But Henry and Trulock are mistaken that this appeal of the adjudication of the plaintiffs' civil

rights claims may serve as a vehicle for them to assert their grievance against KLCIS. Here, for Rule 41(a)(2) purposes, we must determine if Henry and Trulock suffered legal prejudice. *See Pedreira*, 79 F.4th at 751. And to make that determination about prejudice, we do not need to resolve whether KLCIS acted in good faith or reach the other questions bound up in Henry and Trulock's quarrel with KLCIS. We see no reason to undo the settlement agreements resolving the plaintiffs' civil rights claims so that Henry and Trulock can attack KLCIS under Kentucky insurance law.

## CONCLUSION

We affirm the district court's order dismissing the civil rights lawsuits against Sean Henry and Chris Trulock with prejudice.