**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0232n.06
Filed: May 5, 2008

**Nos. 07-1302, 07-1498**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| DEGUSSA ADMIXTURES, INC., | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| DOUGLAS BURNETT and SIKA CORP., | ) | WESTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendants-Appellees. | ) | |

Before: BATCHELDER and SUTTON, Circuit Judges; and BARZILAY, Judge.[*]

SUTTON, Circuit Judge. After Degussa Admixtures voluntarily dismissed with prejudice its state-law action against Douglas Burnett and Sika Corporation, the district court granted Burnett and Sika's motion for attorney's fees. Because the district court neither plainly erred in determining that Michigan law governs the motion nor abused its discretion in granting the motion, we affirm.

I.

In 1986, Burnett started working for Degussa, a manufacturer of admixtures for concrete, and eventually became a salesman for the company responsible for western Michigan. During his tenure

---

[*] The Honorable Judith M. Barzilay, Judge of the United States Court of International Trade, sitting by designation.

with Degussa, Burnett signed a confidentiality agreement but not a noncompete agreement. In August 2005, Burnett left Degussa and landed a job as a salesman covering all of Michigan for Sika Corporation, one of Degussa's competitors.

In his first couple months with Sika, Burnett persuaded several former customers to switch to Sika products. Convinced that Burnett could not "turn over those customers so quickly . . . without relying on [confidential] information" he had acquired at his former employer, JA 587, Degussa filed a complaint against Burnett and Sika in federal court on diversity grounds. In particular, Degussa alleged that Burnett breached his confidentiality agreement with Degussa, that Sika induced that breach and that Burnett and Sika violated the Michigan Uniform Trade Secrets Act, Mich. Comp. Laws § 445.1901 *et seq.* Degussa sought a temporary restraining order, damages and injunctive relief.

The district court denied Degussa's motion for a temporary restraining order, reasoning that Degussa "failed to allege with any specificity the confidential information that Burnett possesses" and that "generalized allegations of impropriety do not demonstrate that, absent an injunction, [Degussa] will suffer irreparable harm." JA 129–30. After considerable discovery, Degussa withdrew its request for a preliminary injunction and made a "business decision" to dismiss its complaint without prejudice. JA 297. Burnett and Sika responded by filing a motion for costs and attorney's fees. The court granted Degussa's motion contingent on the company paying Burnett and Sika their costs and fees. Degussa then withdrew its previous motion to dismiss and filed a motion to dismiss its complaint *with* prejudice, contending that such a dismissal "will protect Defendants

against a new action based upon the dismissed claims and that it therefore would not be appropriate

to further award Defendants fees or costs." JA 374. Burnett and Sika again sought fees. The district

court granted Degussa's motion to dismiss the complaint with prejudice, denied Burnett and Sika's

motion for costs and fees under Federal Rules of Civil Procedure 11 and 41(a) and granted Burnett

and Sika's motion for fees (totaling roughly $114,000) under the Michigan Uniform Trade Secrets

Act. Degussa challenges the attorney's fee award.

II.

A.

This case initially presents a choice of law question: Does federal or state law govern?

Degussa contends that the fee provision in the Michigan Uniform Trade Secrets Act amounts to a

procedural, not a substantive, rule under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), and

thus does not apply. The district court held that Degussa waived this argument by failing to raise

it in a timely manner and that, in the alternative, the argument was without merit. Degussa

challenges only the latter determination in its primary appellate brief and asks us to review that

determination for plain error. Leaving to the side whether even a plain error would excuse Degussa's

waiver, *cf. United States v. Rogan*, 517 F.3d 449, 454 (7th Cir. 2008) ("[T]here is no general doctrine

of plain-error review in civil cases."), Degussa has not shown that the district court's decision to

apply Michigan law was "obvious[ly] or clear[ly]" wrong, *see United States v. Vonner*, 516 F.3d 382,

386 (6th Cir. 2008) (en banc) (holding, in the criminal context, that plain error requires, at a minimum, a showing of error that "was obvious or clear") (internal quotation marks omitted).

While Degussa captures the *Erie* dichotomy correctly—it indeed requires a federal court sitting in diversity to apply state substantive law and federal procedural law, *see Erie R.R.*, 304 U.S. at 78—the district court did not clearly err in invoking the Act here. "[I]n an ordinary diversity case where the state law does not run counter to a valid federal statute or rule of court, and usually it will not, state law denying the right to attorney's fees or giving a right thereto, which reflects a substantial policy of the state, should be followed." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 259 n.31 (1975) (internal quotation marks omitted and alteration in original). Federal courts sitting in diversity thus customarily will apply state "fee-shifting rules that embody a substantive policy, such as a statute which permits a prevailing party in certain classes of litigation to recover fees." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 52 (1991).

Michigan follows the "American rule," meaning that "attorney fees generally are not recoverable from the losing party as costs in the absence of an exception set forth in a statute or court rule expressly authorizing such an award." *McAuley v. Gen. Motors Corp.*, 578 N.W.2d 282, 285 (Mich. 1998). The Michigan Uniform Trade Secrets Act provides an exception: "If a claim of misappropriation is made in bad faith, a motion to terminate an injunction is made or resisted in bad faith, or willful and malicious misappropriation exists, the court may award reasonable attorney's fees to the prevailing party." Mich. Comp. Laws § 445.1905.

This provision amounts to a substantive rule under *Erie,* requiring federal courts to apply it in a diversity case. As a state law that "permits a prevailing party in [a] certain class[] of litigation to recover fees," the attorney-fee provision "embod[ies] a substantive policy" of the State, *Chambers*, 501 U.S. at 52—a policy that deters frivolous trade-secret actions that threaten "free and open competition in the manufacture and sale of unpatented goods" or that discourage "workers from pursuing their livelihoods when they leave their current positions," *PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1268 (7th Cir. 1995) ("[T]rade secret law does not provide a reserve clause for solicitous employers.").

Nor has Degussa pointed to any federal statute or rule that conflicts with the policies underlying the Act's attorney-fee provision. As the Ninth Circuit recently concluded in addressing an identical provision of California law, the Act's attorney-fee provision is substantive because it "applies only in cases where a trade secret misappropriation claim was filed," it "does not supplant or collide directly with any Federal Rule, and it embodies a substantive state policy against the frivolous filing of trade secret claims." *CRST Van Expedited, Inc. v. Werner Enters., Inc.*, 479 F.3d 1099, 1111 (9th Cir. 2007) (citation omitted); *cf.* 10 Charles Alan Wright et al., Federal Practice and Procedure § 2669 ("In these circumstances the federal court should permit an award of a fee on the theory that it is part of the substantive right in issue. A contrary conclusion . . . would encourage [forum shopping].").

*First Bank of Marietta v. Hartford Underwriters Insurance Co.*, 307 F.3d 501 (6th Cir. 2002), is consistent with this decision. In that case, we concluded that an Ohio provision allowing

for attorney's fees was "procedural in nature," so that Rule 11, rather than Ohio law, governed "sanctions for frivolous conduct." *Id.* at 529. Yet, unlike the provision in today's case, that provision was "a general statute that allows for the award of attorneys fees based upon the conduct of the parties and the attorneys in filing and litigating the claim, rather than for success on the underlying merits of the claim." *Id.*; *see also Nielson v. Bob Schmidt Homes, Inc.*, 590 N.E.2d 1291, 1293 (Ohio Ct. App. 1990) (stating that Ohio's "frivolous conduct statute"—the statute at issue in *First Bank of Marietta*—"applies to all civil actions").

In contrast, the Act is not a "general" sanctions statute that, like Rule 11 and the Ohio statute at issue in *First Bank of Marietta*, applies to all civil actions and that is intended to police conduct in litigation; it is a specific statute that applies only to trade-secret claims and that is intended to encourage innovation, competition and job mobility in the marketplace. And, unlike sanctions under the statute in *First Bank of Marietta*, an award of attorney's fees under the Act hinges largely on a party's success on the underlying merits of the claim; the court may award fees only to the prevailing party. *Cf. Chambers*, 501 U.S. at 53 ("Rule 11 sanctions do not constitute the kind of fee shifting at issue in *Alyeska* [because they] are not tied to the outcome of litigation.") (internal quotation marks omitted and alteration in original); *Gen. Elec. Co. v. Latin Am. Imports, S.A.*, 127 F. App'x 157, 159–60 (6th Cir. Feb. 8, 2005) (citing *First Bank of Marietta* for the proposition that "when the issue of whether to award attorneys' fees depends on the underlying substantive claim, the issue is substantive in nature"). The district court thus did not clearly err in determining that the Act is substantive for *Erie* purposes. *See Weiss v. St. Paul Fire & Marine Ins. Co.*, 283 F.3d 790, 798 (6th

Cir. 2002) (reversing a "district court's judgment awarding attorney's fees" because the "court, sitting in diversity, was bound to apply the substantive law of Ohio" and because "Ohio law does not permit a court to award attorney's fees [in a particular type of action] except with explicit statutory authorization and to the prevailing party").

## B.

The next question is whether the district court correctly applied the Act in imposing fees on Degussa for bad faith in bringing this trade-secrets claim. We review a district court's decision to award attorney's fees for abuse of discretion, while applying clear-error review to any factual findings underlying that decision. *See Bergman v. United States*, 844 F.2d 353, 357 (6th Cir. 1988); *see also Geier v. Sundquist*, 372 F.3d 784, 789–90 (6th Cir. 2004). The clearly erroneous standard applies to a "finding [of] bad faith." *Bergman*, 844 F.2d at 357.

The Act imposes two requirements on a party seeking attorney's fees: (1) that the party is the "prevailing party"; and (2) that the opposing party's "claim of misappropriation is made in bad faith." Mich. Comp. Laws § 445.1905. All agree that Burnett and Sika were prevailing parties. So the issue is whether the court erred in finding bad faith. Although no Michigan court has defined "bad faith" under the Act, other courts construing identical provisions from other States have concluded, as the district court did here, that bad faith "requires objective speciousness of the plaintiff's claim . . . and . . . subjective bad faith in bringing or maintaining the claim." *Gemini Aluminum Corp. v. Cal. Custom Shapes, Inc.*, 116 Cal. Rptr. 2d 358, 368 (Cal. Ct. App. 2002); *see*

*also Berry v. Haw. Express Serv., Inc.*, No. 03-00385, 2007 WL 689474, at \*13–15 (D. Haw. Mar. 2, 2007) (applying the same test under Hawaii law and noting that other jurisdictions that have addressed the issue also have applied the same test).

We see no reason not to apply this conventional test here. The Michigan courts have indicated that they will seek guidance from their sister state courts in construing the Act, and the parties at all events both subscribe to this formulation of the bad faith test. *See Niemi v. Am. Axle Mfg. & Holding, Inc.*, No. 269155, 2007 WL 29383, at \*2 n.1 (Mich. Ct. App. Jan. 4, 2007) ("Section 9 of the Michigan Uniform Trade Secrets Act requires that the act be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of th[e] act among states enacting it. Thus, it is appropriate to seek guidance from the decisions of other jurisdictions.") (internal quotation marks and citations omitted and alteration in original).

The district court did not commit clear error in finding bad faith or otherwise abuse its discretion in imposing fees on Degussa. In filing this action, Degussa acknowledged that it had no direct evidence that Burnett had used, or was threatening to use, its alleged trade secrets. *See* JA 515 (Degussa's counsel "conced[ing]" that Degussa "did not catch [Burnett] red-handed"); JA 610 (Degussa's vice president disclaiming any allegation that Burnett "threatened to disclose information"); JA 727 (Degussa's sales manager saying that he had "no evidence" that Burnett had disclosed confidential information to "anyone at Sika").

Degussa instead relied largely on the theory of "inevitable disclosure"—that Burnett's new employment inevitably would lead him to rely on or disclose Degussa's trade secrets. *See* JA 607 (Degussa's attorney stating that "[i]t ain't no secret that our case is, in large measure, built upon the Inevitable Disclosure Doctrine"); *see also* JA 515 (same). Michigan, however, has not endorsed that theory and, making matters worse, has added that, "[e]ven assuming that the concept of 'threatened misappropriation' of trade secrets encompasses a concept of inevitable disclosure, that concept must not compromise the right of employees to change jobs. Accordingly, . . . for a party to make a [cognizable trade-secrets claim], the party must establish more than the existence of generalized trade secrets and a competitor's employment of the party's former employee who has knowledge of trade secrets." *CMI Int'l, Inc. v. Intermet Int'l Corp.*, 649 N.W.2d 808, 813 (Mich. Ct. App. 2002); *see also United Rentals (N. Am.), Inc. v. Keizer*, 355 F.3d 399, 412–13 (6th Cir. 2004) (same); *cf. PepsiCo*, 54 F.3d at 1269 ("[T]he mere fact that a person assumed a similar position at a competitor does not, without more, make it inevitable that he will use or disclose trade secret information . . . .") (internal quotation marks and alteration omitted). Even if we assumed that a Michigan court would recognize the inevitable-discovery doctrine, Degussa still needed to be able to establish "more than the existence of generalized trade secrets and [Sika's] employment of [Burnett] who has knowledge of trade secrets." *CMI Int'l*, 649 N.W.2d at 813.

All that Degussa could say, however, is that Burnett had knowledge of its alleged generalized trade secrets (*e.g.*, its prices, margins, customers, mixtures and marketing strategies), that Burnett persuaded several of his former customers at Degussa to switch to Sika products

because of cost savings and that Sika paid Burnett more than he made at Degussa. These allegations do not satisfy even the Michigan courts' contingent acknowledgment of the inevitable-discovery doctrine.

Also problematic are these pre-complaint facts, which Degussa had every reason to know: Degussa had no sales representative in western Michigan for over a month after Burnett departed; Burnett's replacement at Degussa had no sales experience (and had not secured any new customers or called on many of the lost customers during his first several weeks or months with Degussa); the customers had been experiencing "[q]uality problems with Degussa product," JA 736; Degussa had been losing employees in its sales ranks; Burnett approached Sika for employment over concerns about job security and Degussa's new compensation structure and was not making more than other Sika sales representatives; Burnett's boss at Degussa believed Burnett was a "good admixture salesman" who had "integrity" and was "honest," JA 723; and Degussa learned "a few days before [Burnett] resigned" that he "did not have a noncompete" agreement, JA 718.

The picture that emerges, as the district court appreciated, is not that Degussa had an objectively supportable and good-faith claim that Burnett was using trade secrets to gain new customers and was getting paid extra to do so. Rather, it suggests that Degussa's own product-quality, employee-retention and marketing shortcomings led it to file this action in an attempt to slow the bleeding from those self-inflicted wounds—to avoid losing additional market share and salespeople to Sika and to convert Burnett's confidentiality agreement into a noncompete

agreement. As Degussa's vice president (who attached an affidavit to Degussa's complaint) said in response to a question about what led the company to file this suit: "[I]t was the factors of a couple people leaving—leaving to go to Sika, the impact that we thought that was going to have. And then, obviously, seeing that impact in the sales numbers." JA 622. Filing a trade-secret action to restrain legitimate competition and job mobility, needless to say, is not proper. On this record, we see no clear error or other abuse of discretion in the district court's decision to award attorney's fees to Burnett and Sika.

In resisting this conclusion, Degussa contends that the district court should have, consistent with the summary-judgment standard, "give[n] Degussa the benefit of all reasonable inferences that may be drawn from the evidence presented." Reply Br. at 14. Yet questions of fact in the context of deciding whether to award attorney's fees (as opposed to deciding whether to grant summary judgment) are committed to the district court judge, even when decided before a trial. *Compare Bergman*, 844 F.2d at 357, *with Kraus v. Sobel Corrugated Containers, Inc.*, 915 F.2d 227, 230 (6th Cir. 1990). The judge, as the factfinder in the attorney-fee context, is not required to draw all inferences in favor of the non-moving party but instead is permitted to make factual findings in accordance with his or her own view of the evidence. That is just what the judge did here. And given our conclusion that "the district court's account of the evidence is plausible in light of the record viewed in its entirety, [we] may not reverse it even [if we assume that we] would have weighed the evidence differently. Where there are two permissible views of the evidence, the

factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74 (1985).

C.

Because Degussa's appeal was not frivolous or filed for an improper purpose, we deny Burnett and Sika's motion for attorney's fees incurred on appeal.

III.

For these reasons, we affirm.