RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 23a0152p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

NOVUS GROUP, LLC,

　　　　　　　　　　　　*Plaintiff-Appellant*,

　　*v.*

PRUDENTIAL FINANCIAL, INC., et al.,

　　　　　　　　　　　　*Defendants-Appellees*.

＞　No. 22-3736

─────────────────

Appeal from the United States District Court for the Southern District of Ohio at Columbus.
No. 2:19-cv-00208—Edmund A. Sargus, Jr., District Judge.

Argued: May 4, 2023

Decided and Filed: July 17, 2023

Before: SUTTON, Chief Judge; BOGGS and READLER, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:** Jonathan L. Hardt, ROZIER HARDT MCDONOUGH PLLC, Austin, Texas, for Appellant. Michael P. Sandonato, VENABLE LLP, Los Angeles, California, for Appellees. **ON BRIEF:** Jonathan L. Hardt, ROZIER HARDT MCDONOUGH PLLC, Austin, Texas, Jared M. Klaus, PORTER WRIGHT MORRIS & ARTHUR LLP, Columbus, Ohio, for Appellant. Michael P. Sandonato, VENABLE LLP, Los Angeles, California, Joshua D. Calabro, VENABLE LLP, New York, New York, Rachael L. Rodman, ULMER & BERNE LLP, Columbus, Ohio, for Appellees.

---

**OPINION**

---

CHAD A. READLER, Circuit Judge.  Two Columbus businessmen saw an opportunity in the annuities market.  They founded Novus Group and developed a product to fill the gap.  Using a third party, Novus pitched its new concept to a Columbus-based insurance titan, Nationwide.  Not long thereafter, two Nationwide employees left the company to join another insurance giant, Prudential.  Prudential later launched an annuity product that was purportedly just like Novus's idea.  Believing its concept had been stolen, Novus sued Prudential.  The company's complaint alleged that Prudential engaged in trade secrets misappropriation, in violation of Ohio's Uniform Trade Secrets Act.  The district court granted summary judgment to Prudential.  We affirm.

**I.**

Eric Seyboldt and Mark McCanney are Columbus-based financial advisors.  Together, they came up with a financial product seemingly unique to the annuities market:  the Transitions Beneficiary Income Rider.  The product sought to address the reality that, unlike in days past, pension plans are a rarity for most privately employed Americans.  In practice, the Rider would guarantee that, following a life insurance policyholder's death, an insurance company would pay death-benefit proceeds to beneficiaries throughout their lifetimes.

The two founded Novus Group to launch the product.  Novus needed help getting the Rider off the ground.  It turned to Genesis, a financial product development company, to make sure that the Rider was feasible.  And it relied on Annexus, another financial product developer, to spearhead the eventual pitch to Novus's target customer, Nationwide.  These arrangements were governed by two contracts:  (1) an agreement between Novus and Annexus, and (2) an agreement among Novus, Annexus, and Genesis.  Both agreements contained a confidentiality provision.  With respect to the pitch, however, Nationwide would not sign a nondisclosure agreement, or NDA, with Novus, and thus cautioned Novus not to disclose any confidential information about the Rider.

There is one last agreement relevant to the story.  Before Novus existed, Genesis and Annexus created a joint organization named AnnGen.  As part of that arrangement, AnnGen and Nationwide executed their own confidentiality agreement.  The agreement covered information revealed during talks about a possible relationship between the two parties.

Back to the pitch.  An Annexus executive shared the Rider concept by email with Michael Morrone, a Nationwide vice president.  According to Novus, McCanney also pitched the product in a meeting.  Nationwide, however, chose not to pursue the concept.  After Novus's unsuccessful pitch, Rodney Branch, Morrone's supervisor at Nationwide, left the company to join Nationwide's competitor, Prudential.  Branch convinced Lisa Ferris, who was in Branch's chain-of-command and who had allegedly attended the in-person pitch, also to leave Nationwide for Prudential.

Sometime after Branch and Ferris joined Prudential, their new employer launched Legacy Protection Plus, a death-benefit rider that Novus thought was eerily similar to its Rider.  Novus believed that Prudential (through Branch and Ferris) stole the idea from Novus.  So Novus sued Prudential, invoking diversity jurisdiction and alleging that Prudential misappropriated trade secrets in violation of Ohio's Uniform Trade Secrets Act.  Prudential moved for summary judgment. The district court granted the motion.  Novus timely appealed.

**II.**

As is our practice, we review the district court's grant of summary judgment to Prudential de novo.  *See Niemi v. NHK Spring Co.*, 543 F.3d 294, 298 (6th Cir. 2008).  We view the evidence in the light most favorable to Novus, the non-moving party.  *Id.*  With that standard in mind, summary judgment is appropriate if the record shows that there is "no genuine dispute as to any material fact" and that Prudential is entitled to judgment as a matter of law.  Fed R. Civ. P. 56(a); *Niemi*, 543 F.3d at 298.  In other words, the test is whether Novus has presented a jury question as to each element in the claim.  *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000) (citation omitted).  In a trade secrets misappropriation claim, the elements are:  (1) the existence of a trade secret; (2) acquisition of the trade secret as the result of a confidential relationship or through improper means; and (3) an unauthorized use of the trade secret.  *Tomaydo-Tomahhdo*

*L.L.C. v. Vozary*, 82 N.E.3d 1180, 1184 (Ohio Ct. App. 2017) (citing *Heartland Home Fin., Inc. v. Allied Home Mortg. Cap. Corp.*, 258 F. App'x 860, 861 (6th Cir. 2008)); Ohio Rev. Code. Ann. § 1333.61(B)(1). For today's purposes, we assume the first and third elements and turn our attention to the second prong—whether Prudential acquired the information through a confidential relationship. *See* Ohio Rev. Code Ann. § 1333.61(A).

Keeping track of the parties and agreements that play a part in the underlying script is challenging. Resolving Novus's trade secrets claim is less so. Novus runs into headwinds right from the start, as it failed to address the confidential relationship component of its claim before the district court. Absent from Novus's summary judgment brief, despite Prudential raising the issue, is any reference to a confidential relationship through which Prudential acquired information about the Rider concept. The district court recognized this omission in granting Prudential's motion, explaining that Novus "solely focus[ed]" its confidentiality arguments on whether it took "reasonable efforts" to protect its trade secret, a separate inquiry. Although Novus lobs responses now, arguments raised for the first time on appeal are forfeited. *See Swanigan v. FCA US LLC*, 938 F.3d 779, 786 (6th Cir. 2019).

Even if we set aside that forfeiture, Novus fares no better on the merits. To assess whether a confidential relationship exists, we ask whether Novus and the duo of Branch and Ferris formed a relationship in which the pair had a duty to "maintain the information received" from Novus "in the utmost secrecy." *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 726 (7th Cir. 2003) (citation omitted); *see also* 1 Milgrim on Trade Secrets § 3.03. What duty of confidentiality did Branch and Ferris owe to Novus? Novus says such a duty sprung from a web of agreements. The story goes that because Annexus and Genesis had confidentiality agreements with Novus, and because AnnGen, an entity formed by Annexus and Genesis together, had a confidentiality agreement with Nationwide, Branch and Ferris, as Nationwide employees, had a confidential relationship with Novus, meaning the two owed Novus a duty of confidentiality.

We see things differently. Start with Novus's agreements with Annexus and Genesis. Nationwide was not a party to those contracts, and thus was not bound by them. *See Three-C Body Shops, Inc. v. Nationwide Mut. Fire Ins. Co.*, 81 N.E.3d 499, 503 (Ohio Ct. App. 2017).

True, Nationwide was a party to a different agreement—the contract it inked with AnnGen. But Novus was not a signatory to that agreement. *Cf. AtriCure, Inc. v. Meng*, 12 F.4th 516, 526 (6th Cir. 2021) ("In Ohio, a nonparty to a contract generally may not enforce a party's contractual duties . . . ."). Nor does Novus contend that it was a third-party beneficiary (an argument that, in any event, would likely fail, given the lack of evidence suggesting that the contract was "intended" to directly benefit Novus). *See Huff v. FirstEnergy Corp.*, 957 N.E.2d 3, 7 (Ohio 2011). Simply put, the agreements Novus points to show that Novus knew how to create a confidential relationship, yet did not form one with Nationwide which, remember, had at one point explicitly declined to do so. *See, e.g.*, *Fail-Safe, LLC v. A.O. Smith Corp.*, 674 F.3d 889, 894 (7th Cir. 2012); *R & R Plastics, Inc. v. F.E. Myers Co.*, 637 N.E.2d 332, 341 (Ohio Ct. App. 1993). Perhaps there could be significance to the fact that the information Annexus gave Nationwide was "marked confidential." But as Novus alludes to the point only in skeletal fashion, without supporting authority, the argument is forfeited as perfunctory. *Buetenmiller v. Macomb Cnty. Jail*, 53 F.4th 939, 946 (6th Cir. 2022).

Novus also contends that its trade secret information was within the scope of the agreement between Nationwide and AnnGen. That is so, Novus says, because the NDA covered a "New Heights" project, which, in Novus's mind, included the pitch for its Rider concept. The problem here is that what allegedly was in the mind was not on the paper: the phrase "New Heights" is never mentioned in the document. And Novus fails to flesh out any alternative argument as to why the NDA would sweep so broadly. Next, Novus, citing *Beard Research, Inc. v. Kates*, 8 A.3d 573 (Del. Ch. 2010), concocts a duty of confidentiality owed by Branch and Ferris to Novus even in the absence of a signed nondisclosure agreement. But that is not what *Beard* holds; it dealt with an allegation that employees misappropriated their employer's trade secrets, not the secrets of a third-party company. *Id.* at 580–82, 590.

Failing on these fronts, Novus recasts its theory of the case. Its misappropriation theory, the company contends, was never limited to the idea that Ferris or Branch violated a confidential duty. Rather, its theory purportedly also includes the notion that Prudential acquired the confidential information through "improper means." Yes, the term "misappropriation" includes both using information obtained in violation of a confidential duty as well as using information

acquired through "improper means" such as theft, bribery, or misrepresentation. Ohio Rev. Code Ann. § 1333.61(A)-(B)(2)(b). Yet Novus did not raise this theory in district court. Today is too late. *See Swanigan*, 938 F.3d at 786.

*     *     *     *     *

We affirm the district court's judgment.