NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0252n.06

Case No. 24-3348

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

SHEPARD AND ASSOCIATES, INC., dba Lokring )
Southwest Company, et al. )
      Plaintiffs, )
  )
v. )
  )
LOKRING TECHNOLOGY, LLC, )
  )
     Defendant – Third-Party Plaintiff - Appellee, )
  )
TUBE-MAC INDUSTRIES, INC., )
     Third-Party Defendant – Appellant. )
  )
  )

FILED
May 16, 2025
KELLY L. STEPHENS, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

OPINION

Before: BOGGS, GIBBONS, and NALBANDIAN, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge: This appeal concerns Tube-Mac Industries, Inc.'s ("Tube-Mac") request for attorney's fees after Lokring Technology, LLC ("Lokring") brought third party claims against it for alleged trade secrets misappropriation. Shepard and Associates first sued Lokring for breach of contract, and Lokring counterclaimed for trade secrets violations, later adding Tube-Mac as a third party defendant. The district court granted summary judgment in Tube-Mac's favor on the third party claims relevant to this appeal. As a prevailing party, Tube-Mac moved for costs from Lokring, as well as attorney's fees under trade secrets provisions of federal and Ohio law. The district court awarded almost $33,000 in costs but denied Tube-Mac's motion for nearly $1 million in fees. Tube-Mac appealed the district court's refusal to award fees on the third party trade secrets claims. We affirm the district court's decision.

**I.**

Lokring is an Ohio company that manufactures and sells pipe fittings and tools through a network of independent, exclusive distributors. Joe Shepard became one of these distributors in 2003 for a territory in the southwestern United States and founded Shepard and Associates, Inc. to operate the distributorship. Lokring used exclusive distributor agreements ("EDAs") to structure its relationships with its distributors. Joe Shepard, Brad Shepard, Shepard and Associates, and Lokring executed an EDA as well as a nondisclosure agreement ("NDA") in 2016.

The relationship ended poorly in 2020, however, and this litigation began when Shepard and Associates brought a breach of contract suit against Lokring. Lokring counterclaimed, alleging trade secret misappropriation. Lokring then amended its counterclaims and asserted third party claims impleading Jared Guidry and Tube-Mac.

Lokring's third party claims include the misappropriation claims, under the federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 et seq. and the Ohio Uniform Trade Secrets Act ("OUTSA"), Ohio Rev. Code § 1333.61 et seq., that underlie this appeal. Lokring alleged that while working for Shepard and Associates, two sales representatives, Jared Guidry and Brad Shepard, sent some of Lokring's sales contact information to their personal email accounts; then, after Lokring stopped doing business with Shepard and Associates, Guidry went to work for a competitor, Tube-Mac, and used that data for Tube-Mac's benefit. The third party complaint alleged that Guidry had "steer[ed]" former Lokring customers to Tube-Mac and its products, using the allegedly misappropriated information. DE 61, Am. Countercl. & Third Party Compl., Page ID 899.

To support its misappropriation claims, Lokring argued that when Guidry was hired, Shepard and Associates had an obligation to get him to sign his own NDA or non-compete agreement. But these agreements are not in the record. Lokring did not have an executed copy of any NDA or non-compete agreement involving Guidry or one involving Guidry that names Lokring as a third party beneficiary, and none emerged during discovery. The absence of these documents, and the resulting absence of the duties Lokring needed them to create, would ultimately prove fatal to Lokring's trade secrets case.

But the two trade secrets claims against Tube-Mac survived a motion to dismiss. The subsequent motion for summary judgment was similar in scope: Lokring's secrets in the form of "customer lists and narrative notes regarding customer dealings" had been copied by Brad Shepard and Jared Guidry and then used by Guidry during his subsequent employment with Tube-Mac. [1] DE 418, Summ. J., Op., Page ID 16761–62; DE 311, Lokring's Mot. for Summ. J., Page ID 8457–61. The complexity and unusual posture of this case thus reflects the fact that it arises out of Lokring's claims against a third party defendant (Tube-Mac) based on a confidential relationship allegedly arising out of a contract between a party to a different set of claims (Shepard and Associates) and a dismissed nonparty (Guidry) that both parties deny ever having existed. [2]

---

[1] Guidry and Brad Shepard had sent Excel files containing information from Lokring's customer relationship management (CRM) database from their Lokring email accounts to their personal email accounts. Brad Shepard also obtained a backup of another CRM database in summer 2020 and sent it to his personal email account.

[2] Early in the litigation, the district court granted Lokring's motion for a preliminary injunction against the Shepard parties and also dismissed claims against Guidry for lack of personal jurisdiction.

The district court granted summary judgment for Tube-Mac on both trade secrets claims. Tube-Mac then moved for costs and fees under Fed R. Civ. P. 54, the Lanham Act (15 U.S.C. § 1117(a)),[3] 28 U.S.C. § 1927,[4] and the inherent powers of the district court, seeking $1,014,849.69 in total.[5] The district court granted Tube-Mac's motion for costs, awarding it $32,720.74. Neither Tube-Mac nor Lokring contest this decision on appeal. The district court then considered, in turn, Tube-Mac's motion for fees under (1) federal and state trade secrets law; (2) the Lanham Act, (3) 28 U.S.C. § 1927, and (4) the court's inherent authority. The court awarded no fees on any theory of recovery. On appeal, Tube-Mac challenges only the district court's refusal to award attorney's fees under federal and Ohio trade secrets law.

## II.

This court reviews an order granting or denying attorney's fees for abuse of discretion. *In re Flint Water Cases*, 63 F.4th 486, 501, 505 (6th Cir. 2023). Deference in this context is appropriate because the award of fees depends on a factual assessment of the course of litigation, and because we do not seek to encourage "frequent appellate review" of such cases. *Id.* at 501; *see also Imwalle v. Reliance Medical Prods., Inc.*, 515 F.3d 531, 551 (6th Cir. 2008). The district court's underlying factual findings are reviewed for clear error. *Magnesium Mach., LLC v. Terves, LLC*, No. 20-3779, 2021 WL 5772533, at *4 (6th Cir. Dec. 6, 2021).

---

[3] 15 U.S.C. § 1117 provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."

[4] 28 U.S.C. § 1927 provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

[5] A district court has the "inherent power" to issue sanctions including an award of attorney's fees "to deter misconduct." *Wesco Ins. Co. v. Roderick Linton Belfance, LLP*, 39 F.4th 326, 337 (6th Cir. 2022); *Stalley v. Mountain States Health All.*, 644 F.3d 349, 351 (6th Cir. 2011).

Tube-Mac claims throughout its briefing that the district court made errors of law to which de novo review should apply. For instance, it argues that the district court interpreted the bad faith standard "as only applying to the filing of the complaint." CA6 R. 13, Appellant Br. at 27. Upon a closer look, however, the specific errors charged by Tube-Mac are instead failures to consider certain facts or litigation events. These are not errors of law. In fact, Tube-Mac does not point to a statement of law by the district court that it considers to be in error.

Indeed, Tube-Mac cites our decision in *Degussa Admixtures Inc. v. Burnett* for the mistaken proposition that, when making a bad faith determination, a district court must include, within its opinion, explicit analysis of a plaintiff's conduct throughout litigation, as well as conduct at the time a complaint is filed. 277 F. App'x 530, 534 (6th Cir. 2008). *Degussa* does indeed state that bad faith may occur in "bringing or maintaining" a trade secrets claim. *Id.* (citation omitted). But requiring a district court to consider the possibility of post-filing bad faith is not the same as requiring a district court to discuss it on pain of reversal. A district court need not explicitly find a lack of bad faith at any particular later stage of litigation in order to refuse to award attorney's fees. We do not require district courts to articulate their rationale *not* to issue various other forms of sanctions in any specific way. *See Gibson v. Solideal USA, Inc.*, 489 F. App'x 24, 32, 34 (6th Cir. 2012); *Eaton Aerospace LLC v. SL Montevideo Tech., Inc.*, 129 F. App'x 146, 153–54 (6th Cir. 2005); *Runfola & Assocs., Inc. v. Spectrum Reporting II, Inc.*, 88 F.3d 368, 375 (6th Cir. 1996) ("While district courts are required to articulate a basis for awarding sanctions, nothing requires them to explain their reasons for not ordering sanctions."). And we will not do so here.

Tube-Mac alleges that the district court's decision "is entirely based on the erroneous premise that whether a claim of . . . misappropriation is made in bad faith, as set forth in [the DTSA and OUSA], is only to be considered at the time of filing of the complaint." CA6 R.13, Appellant

Br. at 38–39. But the district court's thorough decision is based on no such premise. The underlying merits of trade secrets claims are highly relevant to the bad faith inquiry. *See infra.* And there was no hint that the district court erroneously thought itself barred from considering post-filing conduct.

In fact, the district court quoted the exact *Degussa* language that Tube-Mac claims it ignores. While this alone may not show conclusively that it considered post-filing conduct, the court's overall analysis is framed in terms of Lokring's "pursuit" of the claims and discovery to support them, not its original filing of the claims considered in isolation.[6] We also note that Tube-Mac focused its initial argument for fees on the merits of Lokring's claims at the time they were filed. DE 427, Mot. for Costs and Fees, Page ID 16916–17. In other words, Tube-Mac argued to the district court that crucial problems with Lokring's case should have been immediately apparent, and now on appeal faults the district court for primarily addressing Tube-Mac's own arguments.

We proceed to review the district court's decision denying attorney's fees for an abuse of discretion and its underlying factual findings for clear error.

**III.**

The trade secrets laws under which Tube-Mac seeks fees each include provisions that allow a court to award reasonable attorney's fees if a misappropriation claim is made in bad faith. The federal Defend Trade Secrets Act provides in relevant part that "if a claim of . . . misappropriation

---

[6] The district court also considered Lokring's post-filing conduct under other headings and sources of authority in its order on fees—for example, in saying that after surviving the motion to dismiss, Lokring obtained evidence in support of its motions for summary judgment against Tube-Mac. This particular point was aimed at the Lanham Act's fee-shifting provision, which allows the awarding of fees in "exceptional" trademark cases. 15 U.S.C. § 1117(a). But the district court's analysis under these other potential avenues for a fee award is at least relevant to the question of whether it was considering Lokring's conduct during the whole course of litigation.

is made in bad faith, which may be established by circumstantial evidence, a motion to terminate an injunction is made or opposed in bad faith, or the trade secret was willfully and maliciously misappropriated, [the district court may] award reasonable attorney's fees to the prevailing party." 18 U.S.C. § 1836(b)(3)(D). The Ohio Uniform Trade Secrets Act provides that "[t]he court may award reasonable attorney's fees to the prevailing party, if . . . [a] claim of misappropriation is made in bad faith." Ohio Rev. Code § 1333.64(A).

This court has not established the precise contours of the underlying bad faith determination in a published decision. But it has recognized before that the standard contains both objective and subjective components: the claim must be known to be meritless, and the party must pursue it with an improper motive. *Magnesium Mach.*, 2021 WL 5772533, at *5 (federal and Ohio law); *cf. also Degussa*, 277 F. App'x at 534 (analogous Michigan statute). It has also recognized that the bad faith standard for a trade secrets misappropriation claim is

> consistent with our definition of "bad faith" in the similar context of sanctions imposed under a court's inherent authority: "bad faith" requires "(1) that the claims advanced were meritless, (2) that counsel knew or should have known this, and (3) that the motive for filing suit was for an improper purpose such as harassment."

*Magnesium Mach.*, 2021 WL 5772533, at *5 (quoting *United States v. Llanez-Garcia*, 735 F.3d 483, 492 (6th Cir. 2013)); *see also Aday v. Westfield Ins. Co.*, No. 21-3115, 2022 WL 203327, at *14 (6th Cir. 2022); *Elmagin Capital, LLC v. Chen*, Nos. 22-22739, 22-2813, 22-2889 & 23-3104, 2024 WL 2845535, at *5 (3d Cir. Mar. 21, 2024).

"[S]omething more" is required than the knowing pursuit of meritless claims. *BDT Prods., Inc. v. Lexmark Int'l*, 602 F.3d 742, 753 (6th Cir. 2010) (emphasis omitted). This could be a finding that the party sought to be sanctioned had been "[h]arassing the opposing party, delaying or disrupting litigation, hampering the enforcement of a court order, or making improper use of the courts." *Id.* 754. And finally, it is true that

> it is not necessary that the court find that an action was meritless as of filing, or even shortly thereafter. It can become apparent part-way through a suit that an action that initially appeared to have merit is in fact meritless; parties and attorneys have a responsibility to halt litigation *whenever* they realize that they are pursuing a meritless suit.

*Id.* 753 n.6. (emphasis in original). No matter how the standard is articulated, a district court must find that a party's claim was meritless, that the party knew at a certain point that it was meritless and nonetheless maintained it, and that the party brought or maintained the claim for some improper purpose.

On appellate review, the district court's decision is entitled to deference due to its familiarity with the litigation. *See Imwalle*, 515 F.3d at 551. The district court in this case reasoned that Lokring did not bring its claims against Tube-Mac in bad faith, because until summary judgment Lokring had some evidence and at least a potentially plausible case against Tube-Mac. Because of the deferential standard of our review, for Tube-Mac to prevail, Lokring's claims would have to be so obviously meritless, the evidence of an improper motive so clear, and its conduct so egregious that the district court abused its discretion by *refusing* to find bad faith and award attorney's fees—all under statutes providing that a district court *may* award fees for bad faith. Tube-Mac's arguments do not sustain this heavy burden.

## A.

Tube-Mac's assertion that the district court abused its discretion is based on two main arguments. First, it argues that Lokring's trade secrets claims against Tube-Mac were obviously meritless from the start and only became more so as discovery and litigation progressed. Second, it argues that instances of litigation and discovery conduct were egregious and unacceptable enough to support a bad faith determination.

We begin with the substance of Lokring's claims as they were pleaded and litigated. This analysis should not be understood to pass on the merits of the claims themselves, which are not before this court. Our inquiry is limited to whether the claims were so obviously meritless that the district court's refusal to find bad faith was an abuse of discretion. Put differently, we are only considering whether the claims were colorable and remained so as the case developed. *See Magnesium Mach.*, 2021 WL 5772533, at \*6; *Akira Techs., Inc. v. Conceptant, Inc.*, 773 F. App'x 122, 126 (4th Cir. 2019) (finding no clear error and affirming order denying attorney's fees under DTSA where losing party "had at least some chance of success" based on the state of the record); *Elmagin*, 2024 WL 2845535, at \*5; *Aday*, 2022 WL 203327, at \*13 (concluding that misappropriation claim was not objectively baseless when some but not all misappropriation elements were proven); *Metron Nutraceuticals, LLC v. Adams*, No. 1:20-cv-01803, 2023 WL 6117988, at \*2–4 (N.D. Ohio Sept. 19, 2023).

The elements of a trade secrets misappropriation claim are similar under federal and Ohio law. To recover under the Defend Trade Secrets Act, a plaintiff must demonstrate "(1) the existence of a trade secret, defined generally as information with independent economic value that the owner has taken reasonable measures to keep secret[;] (2) that is related to a product or service used in, or intended for use in, interstate or foreign commerce[;] and (3) the misappropriation of that trade secret, defined broadly as the knowing improper acquisition, use, or disclosure of the secret." *In re Island Indus., Inc.*, No. 23-5200, 2024 WL 869858, at \*2 (6th Cir. Feb. 29, 2024) (quoting *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 905 (3d Cir. 2021) (alterations in original)) (citing 18 U.S.C. §§ 1836(b)(1), 1839(3), and 1839(5)). Most relevant for this case, misappropriation is defined as

(A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(B) disclosure or use of a trade secret of another without express or implied consent by a person who –

    (i) used improper means to acquire knowledge of the trade secret;

    (ii) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was

        (I) derived from or through a person who had used improper means to acquire the trade secret;

        (II) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or

        (III) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret. . . .

18 U.S.C. § 1839(5).

The Ohio Uniform Trade Secrets Act has similar requirements. "'Improper means' includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy," and "misappropriation" of a trade secret is defined as

(1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means;

(2) Disclosure or use of a trade secret of another without the express or implied consent of the other person by a person who did any of the following:

    (a) Used improper means to acquire knowledge or the trade secret;

    (b) At the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret that the person acquired was derived from or through a person who had utilized improper means to acquire it, was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use, or was derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use;

Ohio Revised Code § 1331.61 (A) and (B).

This court has summarized "misappropriation" as "acquisition of [a] trade secret as [a] result of a confidential relationship or through improper means" and "unauthorized use of [that] trade secret." *Novus Grp., LLC v. Prudential Fin., Inc.*, 74 F.4th 424, 427–28 (6th Cir. 2023). Lokring asserted that Tube-Mac violated these statutory provisions and misappropriated Lokring's

trade secrets when Guidry, while working for Tube-Mac, used Lokring's customer contact data by reaching out to potential customers on behalf of Tube-Mac.

On summary judgment, the district court held that Lokring was not able to establish essential elements of its trade secrets misappropriation claims. Lokring was unable to discover a signed NDA between Guidry and Shepard and Associates, and unable to overcome the Statute of Frauds. Thus, without a signed agreement either between Guidry and itself or between Guidry and Shepard that named Lokring as a third party beneficiary, Lokring could not show a confidential relationship between Guidry and Lokring that could have been breached. And Lokring could not show that Guidry had obtained trade secrets through improper means, which would have been an alternative way to establish misappropriation. Finally, the district court determined that the customer contact data were not trade secrets at all, because Lokring had not taken steps to protect the data: Guidry had been working for Shepard for over a year, but Lokring had never verified that he had signed an NDA.

In seeking fees, Tube-Mac argued before the district court that "Lokring and its counsel knew the lack of a signed NDA was fatal to its claims but proceeded with this lawsuit anyway." DE 427, Mot. for Costs and Fees, Page ID 16917. In Tube-Mac's telling, the suit "was not brought on a solid legal foundation" and had been brought "to harass Tube-Mac, interfere with its business, and obtain information via discovery on Tube-Mac's business dealings." *Id.* at Page ID 16918, 16929. The district court disagreed with this assessment. Although Lokring had not ultimately prevailed, its case had not been completely meritless. As explicitly related to trade secrets misappropriation,

> "[w]hile Lokring did not meet its burden under Rule 56, it had a basis to pursue
> discovery as to a confidentiality agreement with Guidry and what Guidry did with
> the Lokring information he obtained after he began working for Tube-Mac. It is

certainly material to this Court's analysis that Guidry sent emails challenging the
quality of Lokring's product from a Tube-Mac server."

DE 443, Order on Costs and Fees, Page ID 17703.

**B.**

It was not an abuse of discretion for the district court to conclude that Lokring's

misappropriation claims were not meritless to the point of being sanctionable. On appeal, Tube-

Mac argues that from the beginning Lokring knew it had no signed NDAs and knew that this

absence would be fatal to its claims. But Lokring had colorable arguments supporting its claims

through summary judgment. And even if arguments are thinly supported and prove to be wrong,

loss on summary judgment does not necessarily mean they are so meritless as to have been brought

in bad faith. *Aday*, 2022 WL 203327, at *13 (trade secrets context) (citing *Schlaifer Nance & Co.*

*v. Estate of Warhol*, 194 F.3d 323, 337–38 (2d Cir. 1999) (inherent power and § 1927 context));

*BDT Prods.*, 602 F.3d at 752.

First, to the extent that the district court found that Lokring had a "basis to pursue

discovery" in the form of a good faith belief that a signed NDA existed, we cannot conclude that

this factual determination was clear error. DE 443, Order on Costs and Fees, Page ID 17703. A

signed NDA between Shepard and Guidry naming Lokring as a third party beneficiary would have

changed the case. If it had been discovered, the document would have bolstered Lokring's

misappropriation case against Tube-Mac by creating a confidential relationship or duty of secrecy

from which Guidry could have obtained Lokring's information, then disclosed it while working

for Tube-Mac.[7] It is especially noteworthy, as well, that after the summary judgment opinions,

---

[7] Tube-Mac argues on appeal that because Lokring never asserted spoliation against Tube-Mac, even successfully establishing spoliation against Shepard or Guidry would not have helped Lokring's case. While this may be true, the discovery of an actual contract would have.

Shepard consented to a judgment against it on Lokring's spoliation claims, pursuant to a settlement agreement.

Second, the district court did not abuse its discretion because Lokring had a colorable misappropriation argument based on potentially showing that Guidry had obtained trade secrets by violation of a "duty of confidentiality" even without a signed agreement. 18 U.S.C. § 1839; Ohio Revised Code § 1331.61 (A) and (B). In deciding the claim on summary judgment, the district court relied on the Sixth Circuit's decision in *Novus Group*, which applied Ohio law on the OUTSA and issued after the parties briefed their summary judgment motions. 74 F.4th at 424. This court in *Novus Group* considered the merits of a similar argument to the one Lokring advanced here, although we ultimately rejected it.

In that case, we deemed valid only contractual duties "on the paper" in holding that no confidential relationship existed; we declined to find a relationship based on a "web of agreements" that did not explicitly bind the party accused of misappropriation. *Id.* at 428–29. In the present case, Lokring's argument failed on Statute of Frauds grounds. The district court ruled, based on Ohio law, that the "alleged" contracts were to be "'ignored' or treated as a 'nullity.'" DE 418, Summ. J. Op., Page ID 16769 (quoting *Olympic Holding Co., LLC v. ACE Ltd.*, 909 N.E.2d 93, 95 (Ohio 2009)). But Lokring's failed argument is similar to the losing argument in *Novus Group* in that it involved a party asserting misappropriation by a related party not expressly bound by existing contracts. *See* 74 F.4th at 428. To be sure, there are differences: the theories alleged in this case, based on a contractual duty requiring another party to enter a confidential relationship, are not the same as a theory based on an express confidential relationship with a related entity (as we faced in *Novus Group*). But the fact that the *Novus Group* court engaged substantively with

those arguments, with no suggestion of bad faith, supports the fact that Lokring's similar arguments were at least colorable.

Finally, Lokring also argued that the "improper means" element could be shown by violation of an email notice like the one appended to Guidry's email of the customer data to his personal account. The Sixth Circuit has held that an unsuccessful misappropriation claim based on an email sent to oneself, even without a violation of a specific employer policy, is not necessarily "objectively baseless." *Aday*, 2022 WL 203327, at *13. And at least one other court has sustained a jury verdict of misappropriation based on an email footer. *Alifax Holding SpA v. Alcor Sci. Inc.*, 404 F.Supp.3d 552, 568 (D.R.I. 2019), *aff'd in part and rev'd in part and remanded sub nom. Alifax Holding SpA v. Alcor Scientific LLC*, No. 2022-1641, 2022-1723, 2024 WL 2932910 (Fed. Cir. June 11, 2024));[8] *see also CPI Card Grp., Inc. v. Dwyer*, 294 F. Supp. 3d 791, 810 (D. Minn. 2018). Once again, the district court did not abuse its discretion when it determined that Lokring's misappropriation claim was not made in bad faith.

Finally, in any event, even if trade secrets claims are meritless and the party bringing them knew this, the party seeking fees must still show an improper motive—like, for example, harassment or making improper use of the courts. *See BDT Prods.*, 602 F.3d at 753. Bad faith may be shown by circumstantial evidence. 18 U.S.C. § 1836(b)(3)(D). But the district court's refusal to find it here was not an abuse of discretion.

## C.

Beyond the merits of the claims themselves, Tube-Mac argues that other actions by Lokring support a finding of bad faith. As these questions move further from the legal basis of the

---

[8] The district court there ultimately ordered a new trial on the issue of misappropriation of a "conversion algorithm," but it noted along the way that the verdict was supported by evidence that a party had disregarded an email footer. *Alifax*, 404 F.Supp.3d at 568. The Federal Circuit ultimately reinstated the jury verdict. *Alifax*, 2024 WL 2932910, at *12.

claims, they turn out to be more informed by the facts of the case, and the rationale for our deference to the district court's management and experience of the litigation becomes correspondingly stronger. *Cf. Flint Water Cases*, 64 F.4th at 501; *Rui He v. Rom*, 751 F. App'x 664, 673 (6th Cir. 2018).

First, Tube-Mac argues that Lokring advanced inconsistent positions in its motions for summary judgment, specifically, that "it was an uncontested fact that Mr. Guidry both signed and did not sign the NDA," and that this is itself evidence of bad faith. CA6 R. 13, Appellant Br. at 9, 40. Lokring responds that it "merely argued [] two counterpoints" that were each potentially supported by the evidence. CA6 R.19, Appellee Br. at 25–26. The district court did not address this argument.

The two allegedly conflicting statements in the motion for summary judgment are (1) that the Shepard plaintiffs "concede that they 'breached the EDA by not obtaining NDAs from Guidry and Maywald'" and (2) that "[t]he record overwhelmingly establishes that Plaintiffs are liable for spoliation, including the NDA that Jared was required to and did sign." DE 311, Lokring's Mot. for Summ. J., Page ID 8467, 8469. Lokring cites *Rutland v. R & R Trailers, Inc.*, No. 21-1181, 2021 WL 4847704, at *2 (6th Cir. Oct. 18, 2021), and *Cuyahoga Heights Loc. Sch. Dist. v. Netherlands Ins. Co.*, No. 1:16-cv-1331, 2018 WL 4599829, at *5 (N.D. Ohio Sept. 24, 2018), *aff'd*, 774 F. App'x 974 (6th Cir. 2019), to support the propriety of making alternative arguments at summary judgment. *Rutland* and *Cuyahoga Heights* are better characterized as cases in which alternative legal theories were presented rather than inconsistent statements of allegedly undisputed fact. But in the context of this case, in which the relationships between parties were themselves in dispute, with overlapping claims and counterclaims and starkly different views of

the facts, it was not an abuse of discretion or clear error for the district court to refuse to find bad faith based on these inconsistent statements.

Tube-Mac also claims that further instances of Lokring's bad conduct in litigation and discovery themselves merit an award of fees. These instances appear in a list in its motion for fees under the heading of "Lokring and its counsel's conduct was vexatious and in bad faith." DE 427, Mot. for Costs and Fees, Page ID 16927. On appeal, Lokring argues that this list was marshaled only in support of Tube-Mac's motion for fees under 28 U.S.C. § 1927. Tube-Mac argues in response that its list was directed to support *all* of its bases for requesting fees: the federal and Ohio trade secrets statutes, the Lanham Act, 28 U.S.C. § 1927, and the district court's inherent power—and that the district court's analysis under a § 1927 heading alone showed insufficient consideration.

This litigation conduct seems to fit much more naturally within a § 1927 vexatiousness standard. But even assuming that it was also meant from the start to support a finding of bad faith under the trade secrets statutes, the argument does not carry the weight that Tube-Mac thinks it does. This court has recognized that the standard for bad faith under the court's inherent authority (which, again, is "consistent" with the trade secrets bad faith standard, *Magnesium Mach.*, 2021 WL 5772533, at *5) is *more* stringent for a party seeking fees than the § 1927 standard. *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 646 (6th Cir. 2006); *see also B&P Littleford, LLC, v. Prescott Mach., LLC*, No. 20-1449 &20-1451, 2021 WL 3732313, at *9 (6th Cir. Aug. 24, 2021) (§ 1927 requires "more than negligence but less than bad faith"). Thus, an unchallenged conclusion that litigation conduct did *not* rise to the level of vexatiousness under § 1927 weighs against a finding of bad faith. As set out above, the trade secrets bad faith standard

relies on meritless claims, in addition to an improper motive. At best, this list could potentially serve to support a finding of an improper motive once lack of merit had been established.

None of this is to say, of course, that fees can never be imposed for discovery abuse, vexatious litigation, or conduct unrelated to the merits of a trade secrets claim. But 28 U.S.C. § 1927 and the district court's inherent power are generally better vehicles for recovery of fees in these situations—and Tube-Mac does not appeal the decisions refusing fees under those sources of authority.[9] We also find it suggestive that Tube-Mac does not cite a trade secrets case in which discovery or other litigation misconduct supported an award of fees without a separate determination of knowing meritlessness—let alone any case in which a court of appeals reversed and remanded a district court's *refusal* to order fees, which Tube-Mac asks this court to do.

We find no basis to conclude that the district court abused its discretion in declining to award attorney's fees for this litigation behavior.

## IV.

This litigation was bitter and complex. Tube-Mac prevailed on the merits on an argument it had made from the beginning, and Lokring's conduct was not always praiseworthy. But reversal in the appeal before us would require more. In this case, it was not an abuse of discretion for the district court to refuse to award fees under the trade secrets statutes.

We affirm the judgment of the district court.

---

[9] As set out above, the standard for fees for bad faith litigation under the district court's inherent authority overlaps with the standard for bad faith pursuit of trade secrets claims.